# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| LYMAN W. CRAY<br>4360 Wallace Street<br>Farmville, NC 27828<br><br>and<br><br>VIVIAN WINGO,<br>14011 Maryann Lane<br>Sumerduck, VA 22742<br><br>     Plaintiffs,<br>v.<br><br>WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY,<br>300 7th Street, SW<br>Washington, DC 20001<br><br>     and,<br><br>THE BOARD OF TRUSTEES of the<br>TRANSIT EMPLOYEES RETIREMENT<br>PLAN and the WMATA RETIREMENT<br>PLAN<br>600 Fifth Street N.W.<br>Washington D.C. 20001<br><br>     Defendants,<br><br>and<br><br>WMATA RETIREMENT PLAN AND THE<br>TRANSIT EMPLOYEES' RETIREMENT<br>PLAN,<br>300 7th Street, SW<br>Washington, DC 20001<br><br>    Nominal Defendants. | Case No.: |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1.      Plaintiffs Lyman W. Cray and Vivian Wingo, bring this action against Defendant Washington Metropolitan Area Transit Authority ("WMATA"), individually and on behalf of other employees who are participants and beneficiaries in two defined benefit plans, the WMATA Retirement Plan and/or the Transit Employees' Retirement Plan, (collectively, the "Pension Plans"), to enforce their rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), or in the alternative, under District of Columbia law.

2.      This action alleges that WMATA has failed to properly maintain and administer its employee pension benefit plans and has erroneously claimed that its Retirement Plans are governmental plans exempt from ERISA. WMATA is an interstate compact agency that operates the Metrobus and Metrorail systems in the District of Columbia area, but WMATA is not an agency or instrumentality of any government. As such, it does not qualify as a government at least for purposes of ERISA.

3.      Without the protections of ERISA, Plaintiffs and the Class are left without any real protections as WMATA claims that its Pension Plans are not protected by either the federal law Congress created with ERISA or by any one state or local government's protections that justify ERISA's exemption for "governmental plans." WMATA's failure to have its Pension Plans comply with ERISA harms the participants and beneficiaries in these Pension Plans who rely on these promised pension benefits and who count on these benefits for their retirement.

4.      For example, WMATA has denied Plaintiff Wingo a joint and survivor annuity by claiming her husband modified his election form, but under ERISA, she would have a right to a joint and survivor annuity unless she consented in writing. Similarly, WMATA has thwarted Plaintiff Cray's efforts to get information about a vested pension benefit for which it appears that

WMATA changed the terms of the Plan. For both Plaintiffs, WMATA has refused to provide basis terms about the Plan that would enable Plaintiffs to know whether the decisions about their benefits are correct.

5.       Through this action, Plaintiffs seek an order requiring WMATA to comply with ERISA and provide the Class with the protections of ERISA with respect to the Pension Plans. Plaintiffs also seek determinations that WMATA unlawfully and wrongfully denied their pension benefits from the Pension Plans. Among the relief sought for WMATA's violations, Plaintiffs request the benefits that they are entitled to as a participant/beneficiary in the Pension Plans, and that they be provided other equitable relief that they are entitled to under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). In the alternative, Plaintiffs seek determinations that WMATA breached its fiduciary duty to its Pension Plans' participants by failing to act in the participants' best interests and by mismanaging records, that it breached its contracts with its employees or otherwise rendered agreements unenforceable due to fraud to the detriment of the participants and their beneficiaries, and that it made clear promises regarding retirement benefits on which Plaintiffs reasonably relied, to which injustice can only be avoided by enforcement of those promises.

## JURISDICTION AND VENUE

6.       This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1). D.C. Code § 9-1107.01(80) grants the district courts original jurisdiction over suits involving WMATA's contracts and its torts, and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function.

7.       Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) the employee benefit plans that are the subject of Plaintiffs' claims are

administered in this District and may be found in this District, (b) the violations occurred in this District and (c) Defendant regularly conducts business in and has its headquarters in this District.

8.    This Court has supplemental jurisdiction over Plaintiffs state-law claims under 28 U.S.C. § 1367 and has jurisdiction over those claims under 28 U.S.C. § 1332.

## PARTIES

### Plaintiffs

9.    Plaintiff Lyman W. Cray is a former employee of WMATA. During his employment at WMATA, Plaintiff Cray became a participant, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in two defined benefit pension plans one described as the "WMATA Retirement Plan" and the other described as the "Transit Employees' Retirement Plan." During his employment and at the time of his termination, Plaintiff had been a resident of Washington, District of Columbia. Plaintiff Cray now resides in Farmville, North Carolina.

10.    Plaintiff Vivian Wingo is the wife of the late Daren Wingo, who was employed by WMATA for over twenty-five years. During Mr. Wingo's employment, he was a participant in the "Transit Employees' Retirement Plan," within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiff Wingo was his designated beneficiary in the "Transit Employees' Retirement Plan," within the meaning of ERISA § 3(8), 29 U.S.C. § 1002(8), because she was a person designated by Mr. Wingo to receive an annuity under the Transit Plan in event of his death. At the time of Mr. Wingo's retirement, Plaintiff Wingo and Mr. Wingo lived in Sumerduck, Virginia, where Plaintiff Wingo still resides.

### Defendants

11.    Defendant Washington Metropolitan Area Transit Authority ("WMATA") is an interstate compact entity with its headquarters at 300 7th Street S.W., Washington, D.C. 20004.

WMATA sponsors and administers five retirement plans for its employees, including but not limited to, the Retirement Plan and the Transit Plan. WMATA meets the definition of the term "plan sponsor" under ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), as it is a single employer that established and/or maintains an employee benefit plan and, as ERISA § 3(16)(A) provides, the Administrator is the plan sponsor.

12.     The Board of Trustees is identified in the Employee Retirement Handbook and in Plaintiff Cray's denial latter as the persons who made decisions as to claims for benefits under the Transit Plan and the Retirement Plan and decided appeals for those benefit claims.

**Nominal Defendants**

13.     Nominal Defendant WMATA Retirement Plan (the "Retirement Plan") is a retirement plan sponsored by WMATA. The Retirement Plan meets the definition of a pension plan under ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and the definition of a defined benefit pension plan under ERISA § 3(35), 29 U.S.C. § 1002(35). This Plan is named as a Nominal Defendant pursuant to Rule 19 to ensure that complete relief can be granted as to claims brought on behalf of the Plan or for relief related to or paid into the Plan.

14.     Nominal Defendant Transit Employees' Retirement Plan (the "Transit Plan") is a retirement plan sponsored by WMATA. The Transit Plan meets the definition of a pension plan under ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and the definition of a defined benefit pension plan under ERISA § 3(35), 29 U.S.C. § 1002(35). This Plan is named as a Nominal Defendant pursuant to Rule 19 to ensure that complete relief can be granted as to claims brought on behalf of the Plan or for relief related to or paid into the Plan.

## CLASS ALLEGATIONS

15.    Plaintiffs bring this action as a class action pursuant to Rule 23 on behalf of themselves and the following class of persons similarly situated:

> All participants or beneficiaries of the WMATA Retirement Plan or the Transit Employees' Retirement Plan.
>
> Excluded from the Class are high-level executives at WMATA or any employees who have responsibility or involvement in the administration of the Retirement Plan or the Transit Plan.

**Impractability of Joinder**

16.    The members of the proposed Class are so numerous that joinder of all members is impracticable. WMATA currently employs approximately 12,000 employees. While the exact number of Class members is unknown to Plaintiffs at this time, the amount of current and former WMATA employees who are participants in these plans likely exceeds 1,000.

17.    As Defendant WMATA operates in Washington, D.C., Maryland, and Virginia, WMATA's employees and, therefore, the members of the Class, are geographically dispersed across at least three jurisdictions.

**Commonality**

18.    The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including: (1) whether the Retirement Plan and the Transit Plan are covered by ERISA and are not exempt from ERISA as a governmental plan; (2) whether the fiduciaries of the Retirement Plan and the Transit Plan have failed to administer them in accordance with ERISA; and (3) whether WMATA has failed to comply with its obligations to its Pension Plans' participants under ERISA, and/or the common law.

19.     The issues regarding the relief are also common to the members of the Class as the relief will consist of: (1) a declaration that the Retirement Plan and the Transit Plan are ERISA covered plans; (2) an order requiring that the Retirement Plan and the Transit Plan comply with ERISA's administration and requirements; and/or (3) an order requiring WMATA to pay civil penalties to the Class.

**Typicality**

20.     Plaintiffs' claims are typical of the claims of the other members of the Class because Plaintiffs' claims arise from the same event, practice and/or course of conduct, namely Defendant's failure to maintain the Pension Plans in accordance with ERISA, the requirements of the Retirement Plan documents, and/or the common law. Plaintiffs' claims are also typical because all Class members are similarly affected by Defendant's wrongful conduct.

21.     Plaintiffs' claims are also typical of the claims of the other members of the Class because, to the extent Plaintiffs seeks equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of: (i) a declaration that the Retirement Plan and the Transit Plan are not governmental plans; and (ii) a declaration that the Retirement Plan and the Transit Plan are ERISA covered plans that must comply with the administration and other requirements of ERISA. In addition, to the extent Plaintiffs seek monetary relief, it is for civil fines to the Class, in the same statutory daily amount for each member of the Class.

22.     WMATA does not have any defenses unique to Plaintiffs' claims that would make Plaintiffs' claims atypical of the remainder of the Class.

**Adequacy**

23.     Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class.

24.    Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Class.

25.    Defendant WMATA has no unique defenses against either of the Plaintiffs that would interfere with Plaintiffs' representation of the Class.

26.    Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**Rule 23(b)(1) Requirements**

27.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant WMATA and any other Plan fiduciaries as to whether they would be required to comply with ERISA.

28.    The requirements of Rule 23(b)(1)(B) are satisfied. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether the Plans are covered by ERISA, whether Defendant fulfilled its statutory disclosure obligations and its fiduciary obligations to the Plans, would, as a practical matter, be dispositive of the interests of the other participants in the Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**Rule 23(b)(2) Requirements**

29.    The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole. This action challenges whether the Plans are covered by ERISA and not exempt from ERISA and whether Defendant acted

consistently with its statutory obligations, its fiduciary duties, or otherwise violated ERISA as to the Plan and/or the Class as a whole. The relief primarily consists of declarations that Defendant breached its fiduciary duties or engaged in other violations of ERISA and requests for injunctive relief.

**Rule 23(b)(3) Requirements**

30.     Questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the Retirement Plan and the Transit Plan are covered by ERISA and not exempt from ERISA as a governmental plan, and, if not, (2) whether the fiduciaries of the Pension Plans have failed to administer the Retirement Plans in accordance with ERISA, and (3) whether WMATA has failed to comply with its obligations under ERISA, the plan documents, and/or the common law.

31.     A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.     Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the relief sought by any Class member will either inure to the benefit of the Retirement Plan or the Transit Plan or affect each Class member equally;

B.     Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.     There is no other litigation begun by any other Class members concerning the issues raised in this litigation;

D.     This litigation is properly concentrated in this forum, which is where Defendant WMATA is headquartered; and

E.     There are no difficulties managing this case as a class action.

## FACTUAL ALLEGATIONS

**Plaintiff Cray's Employment at WMATA and Participation in the Pension Plans**

32.     Plaintiff Cray was employed by WMATA from November 22, 1982 to December 22, 1986. He worked as a Special Police Officer from November 22, 1982 until August 24, 1984, then was transferred to the Track Department as a Laborer where he worked until December 1986.

33.     Plaintiff Cray signed an election form to participate in the "WMATA Retirement Plan" on November 22, 1982. He designated his mother, Edna Cray, as his beneficiary.

34.     Plaintiff Cray also signed a beneficiary designation form for the "Transit Employees' Retirement Plan" on August 15, 1984.

35.     Plaintiff Cray recalls that at the time he was employed as a Special Police Officer, the length of employment in his position that was required for vesting in the WMATA Retirement Plan was 16 months. He was informed that 16 months was the vesting period by several sources at the time of his employment, including human resources personnel and other police officers.

36.     Based on Plaintiff Cray's recollection, the Special Police had different vesting requirements for its plan than the other plans for other positions within WMATA and the Metro Transit Police Department.

37.     Plaintiff Cray recalls that when he reached 16 months of employment as a Special Police Officer, he was personally informed that his benefits had vested in the Retirement Plan. He

9

was provided with a pink form memorializing his vested status.

38.    Specifically, on Plaintiff Cray's last day of working as a Special Police Officer, before his transfer, he remembers that his assignment that day was to work downtown in the lobby from 7:00 a.m. to 3:00 p.m., because this was an unusual schedule. Sergeant Bruno, a sergeant on the day shift (a supervisor) at OCCB Metro Headquarters for the Guard, told him to come see him after lunch. Plaintiff Cray took his lunch from 11:00 a.m. to 12:00 p.m. The Sergeant then went up to the records office and brought back a large manilla envelope and gave it to Plaintiff Cray. He remembers that a pink document was inside of this envelope, and this document stated that he was vested. He also remembers being congratulated by three individuals for this achievement: Senior Officer Banks, who worked at New Carrolton railyard, Sergeant Grey-law, who was a sergeant in the field and was responsible scheduling each week for the special police officers, and Marion Smith, who was the dispatcher on Ames Street. All three individuals said the same thing to Plaintiff Cray: "you are vested, which means that money will be with you when you're older."

39.    Plaintiff Cray specifically remembers being pushed to attend union meetings by his coworkers, and attended every meeting, as he believes is demonstrated by the sign-in records.

40.    Plaintiff Cray is well informed of what he was promised that he was entitled to for his retirement. This includes information such as that a Special Police Officer needed 16 months to be vested, which differed from the 5 years for other WMATA employees.

**Plaintiff Seeks Records About His Pension Service**

41.    Plaintiff Cray first contacted WMATA in 2016 to inquire about his employment records and his retirement benefits that he would be receiving when he turned 65. WMATA employees informed him that all the records had been destroyed due to a flood.

42.    Plaintiff Cray called again in 2017 to ask about his documents. WMATA

employees told him that the records had been destroyed in a fire.

43.    A few months before he turned 65, Plaintiff Cray tried to contact WMATA for a third time about his benefits and plan participation. This time, when he informed them that he had been told two different stories, they told him to "pick one," and told him that, regardless, the records were nonexistent.

44.    The fourth time he tried to get more information about his benefits, he ended up reaching a WMATA employee whose name he does not remember. He does remember that this woman informed him that she had worked at WMATA for over 35 years in information services and was about to retire. When Plaintiff Cray explained his situation, she stated that his records had in fact not been destroyed, and that another WMATA employee by the name of "Mr. Eugene" would be able to help Plaintiff Cray gain access to his employment records. She provided him with Mr. Eugene's contact information.

45.    Plaintiff Cray next reached out to Mr. Eugene, a man who was also about to retire, regarding his records. Mr. Eugene was able to locate the records for both of Plaintiff Cray's positions at WMATA. Mr. Eugene informed Plaintiff Cray that these records memorialized the facts that Plaintiff Cray was a Special Police Officer until he was transferred to the track department as a Laborer, and that Plaintiff Cray was vested in the Retirement Plan.

46.    Plaintiff Cray asked Mr. Eugene to send him all of the records, including the pink document that he remembers receiving from Sergeant Bruno. However, Mr. Eugene did not send everything. Plaintiff Cray later asked him about the missing documents, and Mr. Eugene stated that he sent a yellow document titled "Payroll Data Input Form 4," which would, in his opinion, be enough to demonstrate that Plaintiff Cray was vested and was entitled to retirement benefits (specifically, Mr. Eugene stated that the yellow document's Retirement and Charter Record section

11

reflects that the vesting period for Plaintiff Cray's position was 16 months and that the document was created after 21 months of employment). Mr. Eugene told him that was "all that he needed," and "this is just as good as the other copy."

**Plaintiff Cray's Application and Appeal for Pension Benefits Are Denied**

47.     On July 10, 2023, Plaintiff Cray received an email with a letter dated July 7, 2023, from Wanda Mims, "Plan Secretary of the WMATA Retirement Plan," stating that his claim for his Deferred Vested Benefit was denied. The reason provided was that he only had 16 months of credited service in the Retirement Plan (i.e., as a Special Police Officer), but the Retirement Plan provided that benefits were only available to employees who had completed five or more years of credited service before terminating.

48.     Plaintiff Cray appealed that denial on July 26, 2023, stating that at the time of his employment, he was advised by both WMATA headquarters a number of his police co-workers, and union members that the length of employment needed for vesting in the Retirement Plan at the time he worked as a Special Police Officer for WMATA was sixteen months. He had not only been congratulated, but he had received documents memorializing this status.

49.     The appeal was denied on October 26, 2023, in a letter signed by Wanda Mims. It stated that the Board of Trustees voted to uphold the decision to deny his request for a Deferred Vested benefit because he did not have 5 years of service in the Retirement Plan, and denied his request for a refund of contributions because he allegedly did not pay contributions into the Retirement Plan.

**Daren Wingo's Employment and Participation in the Transit Plan**

50.     Plaintiff Wingo is the surviving spouse of the late Daren Wingo.

51. Daren Wingo was employed by WMATA from January 9, 1996 to January 31, 2021. At the time of his retirement, he was a Supervisor in the Structure division of the Track and Structures department.

52. Mr. Wingo was an employee-participant in a defined benefit pension plan styled the "Transit Employees' Retirement Plan."

53. Mr. Wingo completed an application for retirement income with a signature dated January 7, 2021, in which he applied for retirement benefits in accordance with the provisions of Section 3 and 8 of the Transit Employees' Retirement Plan, effective February 1, 2021. The signature of the witness, Willian G. Carter, is dated January 12, 2021.

54. Mr. Wingo also completed a designation of beneficiary form with a signature dated January 7, 2021, in which he specifically designated Plaintiff Wingo as his beneficiary "in accordance with the provisions of Section 11, Paragraph (c) of the Transit Employees' Retirement Plan executed November 19, 1945 and effective November 1, 1945."

55. Mr. Wingo also completed an election form for retirement income payments with a signature dated January 7, 2021, prior to his retirement. On this version of the form, he checked off both (1) a "Life Annuity with Cash Refund" option (providing for a lump sum payment to his beneficiary, Plaintiff Wingo, if the benefits paid during his lifetime are not at least equal to the present value of his total benefit as calculated on the date of his retirement) and (2) a "Life Annuity" option ("Version 1").

56. The form also conspicuously notes that "the selection of my payment option is IRREVOCABLE and I CAN NOT select another payment option at a later date" (emphasis in original). Mr. Wingo initialed to this term on January 7, 2021 on Version 1.

**Ms. Wingo's Claim For Benefits Is Denied**

57.    When her husband passed away in 2023, Plaintiff Wingo received an email from Tracy Taylor-Irvin, Retirement Specialist of the Transit Plan, on January 2, 2024 with a letter informing her that Mr. Wingo had "elected to receive his benefit payments in the form of a Single Life Annuity . . . . no survivor benefits are payable from the plan" and that future pension checks have been stopped.

58.    Unbeknownst to Plaintiff Wingo until 2024, the form provided by the Transit Plan Office presently contains additional markings added post-signature, that (1) "whited out" the check made next to the "Life Annuity with Cash Refund" option and (2) created a new, blank check box next to that option ("Version 2"). Version 2 thereby indicates only the single "Life Annuity" option as selected. These changes are not initialed to or signed by Mr. Wingo. Mr. Wingo's signature was also not updated from Version 1, and it is still dated January 7, 2021.

59.    When Plaintiff Wingo objected and stated that he had elected a Life Annuity With Cash Refund Option, she was told by Ms. Taylor-Irvin that Mr. Wingo "came into the office for his retirement meeting on January 12, 2021 " and modified his election form.

60.    Plaintiff Wingo then contacted the Office of the Inspector General, alleging that Mr. Wingo's pension papers were filled out incorrectly, and that someone had modified the documents to remove Plaintiff Wingo as a beneficiary.

61.    In response to that complaint, Wanda Mims, the Retirement Plan Administration Manager of the Transit Plan, advised Mrs. Wingo in a letter dated April 4, 2024, that:

> Initially, Mr. Wingo's Election Form contained markings that indicated an election of both a Life Annuity Option and a Life Annuity With Cash Refund Option. Under the terms of the Transit Plan's Plan document, a participant is only permitted to receive their benefit in a single form. Therefore, Mr. Wingo was advised that this was an improper election and Mr. Wingo's Election Form could not be accepted by the Transit Plan Office. Mr. Wingo instructed the Transit Plan Office to remove his

14

election of a Life Annuity With Cash Refund Option and advised that he elected to receive his benefit in the form of a Life Annuity Option.

62.    Mr. Wingo did not inform Plaintiff Wingo of this change, before or after it was made, and she did not consent to another form of benefit other than the qualified joint and survivor annuity.

63.    WMATA has provided has no evidence demonstrating that Mr. Wingo knowingly made the change himself,  consented to the change, or was aware of the change, since the signature on the document is the same signature from the initial version of the document with the dual elections. WMATA has also not provided any evidence that Plaintiff Wingo consented to this change.

**WMATA's Pension Plans Are Subject to ERISA and are Not Government Plans**

64.    ERISA applies broadly to all employee benefit plans, unless specifically exempted. 29 U.S.C. § 1003(a).

65.    When Congress found that the operational scope and economic impact of employee benefit plans were increasingly interstate, it enacted ERISA to protect interstate commerce and the continued well-being and security of millions of employees and their dependents from inadequate minimum standards, and provides clear and adequate minimum standards to assure the equitable character of employee benefit plans. 29 U.S.C. § 1001.

66.    ERISA exempts "governmental plans," defined as plans "established or maintained for its employees by the Government of the United States, by the Government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 USC § 1002(32).

67.    WMATA has claimed that its retirement plans, including the Retirement Plan and the Transit Plan, are exempt from ERISA as governmental plans.

68.     As the D.C. Circuit has explained, an entity such as WMATA, may qualify as a governmental agency in some respects, but not for others. For the purposes of ERISA and under the governmental exemption, it is not a governmental agency, under both the *NLRB* and the *Alley* tests.

69.     WMATA was created through a compact, not a state statute, as a "body corporate and politic" with powers to sue and be sued, issue bonds payable from its own revenues, and determine employees' pensions and retirement rights "without regard to the laws of any of the Signatories." WMATA Compact § 12(g). As a result, WMATA employees are not subject to the civil service laws of Maryland, Virginia, or the District of Columbia, nor do they participate in those governments' retirement systems. Instead, WMATA is granted the authority to individually maintain and administer its own pension and retirement plans, separate from state or federal public systems. *Id*.

70.     WMATA is not governed by any one state, nor are its retirement plans governed by a state, and it does not qualify as a government under ERISA's governmental plan exemption.

71.     WMATA is not the government of any one state or political subdivision, and its employees are not covered by state civil service laws or retirement systems. WMATA is not covered by a single state's public retirement system or subject to any state's taxing power. WMATA employees are not employees of any government. WMATA employees are not a part of any state government's public retirement plan. WMATA's multi-jurisdictional nature means its employees are subject no government's comprehensive public retirement protections. When passing ERISA, Congress did not intend to create such a regulatory void – they assumed that governmental plans had state backing and public employee protections.

72.     WMATA is not an agency or instrumentality of the United States, a State, or their subdivisions. Rather, WMATA is a Compact Clause entity – a creature of the Washington Metropolitan Area Transit Authority Compact, signed by Virginia, Maryland, and the District of Columbia, and consented to by Congress:

> Broken down to its simplest form, a Compact Clause entity, such as the Port Authority or the Washington Metropolitan Area Transit Authority, is an agency created by an agreement, or compact, between two or more states, which is approved by Congress. …[O]nce created, these agencies are beholden only to the compacts that created them. The individual states do not retain power over agencies' internal workings, despite the fact that the compact alone often provides an insufficient set of legal guidelines.

Matthew S. Tripolitsiotis, *Bridge Over Troubled Waters: The Application of State Law to Compact Clause Entities*, 23 Yale L. & Pol. R. 163, 165 (2005).

73.     The Supreme Court has repeatedly expressed skepticism that such entities can be understood as arms of the state or that employees of them are somehow employees of the state. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 314–16 (1990) ("The regulatory powers exercised by an interstate agency are powers no longer inhering in any one compacting State; they are powers shared. Likewise, no one State has complete dominion over property, owned and proprietary activities operated, by such an agency. …[A]n interstate agency, over which none of the compacting States exercises such untrammeled control, cannot be said to be an 'arm' of any of them."); *Helvering v. Gerhardt*, 304 U.S. 405, 423 (1938) ("[W]e think it plain that employees of the Port Authority are not employees of the state or a political subdivision of it…."); *see also Lake Country Est. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) (holding that not all interstate compact entities automatically share in the sovereign protections of their signatories, and only if states clearly structured the entity to enjoy sovereign protections should courts extend such immunities).

17

74.     The D.C. Circuit has rejected claims to the "governmental plan" exemption, even though the entity had governmental affiliations. *Alley v. Resolution Trust Corp.*, 984 F.2d 1201 (D.C. Cir. 1993). It held that "measured by the terms and conditions of their employment, [the entity's] personnel far more closely resembled private sector employees than they did government workers." *Id*. at 1206. It also recognized that an agency's identification can change based on the context, and in the ERISA context, it did not qualify as a governmental plan.

75.     The *Alley* court's analysis not only focused on the functionality of the entity, but it also relied on ERISA's legislative history and purpose, which shows that Congress excluded governmental plans because state and local governments already maintained comprehensive retirement systems for their employees. *See* H.R. Rep. No. 93-533, at 9 (1973). Congress sought to avoid federal intrusion into state sovereignty over those systems but did not intend to leave non-governmental employes without protections under either ERISA or state retirement systems.

76.     *Alley* held that FADA's benefit plans were subject to ERISA despite FADA's governmental affiliations because its employes were not part of any public civil service system and its operations resembled those of a private business.

77.     Similarly, for the purposes of ERISA, WMATA should be characterized as a non-governmental entity. The nature of WMATA's relationship to and governance of its employees in the ERISA context illustrates a private, non-governmental relationship. Measured by the terms and conditions of their employment, WMATA's personnel resemble private sector employees not government workers, and the operation of its retirement plans resemble private sector plans. Notably, the District of Columbia, the State of Maryland, and the State of Virginia all have their own operations regarding retirement plans for their employees, and WMATA has its own plans that it operates for its employees.

18

78.      WMATA is a corporate body established by interstate compact, not by any one state, and it is not governed by or subject to the state laws that govern state retirement plans. WMATA hires and compensates its employees independently, and it operates with shared, not sovereign, authority. Like in *Alley*, if the governmental exception to ERISA were to apply to the WMATA Pension Plans, WMATA's employees would be left without either ERISA protections or any state-administered retirement protections. This is not a result that Congress intended.

79.      The legislative history of ERISA demonstrates that the drafters of ERISA did not intend to create such a regulatory void where the scope of governmental plans would include plans established by interstate compact entities such as WMATA. There is also no indication that Congress meant for the governmental plan exemption to reach an entity that relates to its employees as would a private business or an entity whose employees are not subject to laws governing public employees generally.

80.      The structure and function of WMATA and its relationship to the United States and the individual States therefore do not allow it sidestep ERISA's protections and fall under the governmental plan exemption.

81.      WMATA differs from other instrumentalities of political subdivisions of individual states. WMATA was created by interstate compact, so unlike a single-state political subdivision, WMATA is multi-jurisdictional and not exclusively under one state's governance. WMATA issues its own bonds, raises farebox and local jurisdiction contributions, lacks independent taxing power, and each signatory jurisdiction has limited individual control. WMATA is not wholly owned by any one political subdivision or agency. The compact establishes WMATA, but the maintenance of pensions and benefit plans is performed by WMATA itself, not any one state.

82.      By improperly identifying its Pension Plans as governmental plans, WMATA

19

evades the requirements of ERISA in ways that have disadvantaged and harmed Plaintiffs and the Class. Had WMATA not improperly claimed governmental plan status to be exempt from ERISA's provisions, the Retirement Plan and Transit Plan would be subject to ERISA, and Plaintiffs would be entitled to their benefits.

83.    An entity can be characterized as governmental for one purpose and non-governmental for another. Here, in the context of WMATA's retirement plans for its employees, it should be characterized as non-governmental due to its private handling of these plans.

84.    WMATA's Pension Plans are not regulated by any particular state or government. The result of such regulation has led to mismanagement and a lack of fiduciary responsibility and participant protection. Illuminating this issue, in July 2022, WMATA's own Office of Inspector General conducted an audit of WMATA's defined-benefit pension. It concluded that WMATA's DB pension plans were not adequately managed, and alternatives are not being fully pursued. Upon information and belief, this also causes benefit denials and/or reductions, at the detriment of the employee-participants and beneficiaries such as Plaintiffs.

**COUNT I**
**Request for Declaratory Equitable Relief Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3) against WMATA**

85.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

86.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

87.    Pursuant to this provision, and 28 U.S.C. §§ 2201 and 2202, and Rule 57, Plaintiffs seek declaratory relief that the Retirement Plan and the Transit Plan are not governmental plans

within the meaning of ERISA § 3(32), 29 U.S.C. § 1002(32), and thus is subject to the provisions of Title I and Title IV of ERISA.

88.    Pursuant to these provisions, Plaintiffs seek orders directing WMATA to bring the Retirement Plan and the Transit Plan into compliance with ERISA.

89.    As the Retirement Plan and the Transit Plan are not governmental plans within the meaning of ERISA § 3(32), 29 U.S.C. § 1002(32), and meets the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), the Retirement Plan and the Transit Plan should be declared to be ERISA-covered pension plans, and Defendant WMATA should be ordered to bring the Retirement Plan and the Transit Plan into compliance with ERISA, including by remedying the violations set forth below.

90.    Plaintiffs seek a declaration that the Retirement Plan and the Transit Plan must be operated in compliance with ERISA and as such, Defendant WMATA must provide monies to the Retirement Plan and Fund as necessary to fund the obligations WMATA has made to all participants and beneficiaries.

91.    There is an adversity of interest between the Plaintiffs and the Class and Defendant WMATA, and the threatened harm of not receiving retirement benefits to which Plaintiffs and other Class members are entitled is real and substantial.

### COUNT II
**Violation of Reporting and Disclosure Provisions of ERISA § 102, 29 U.S.C. § 1022, ERISA § 104, 29 U.S.C. § 1024 and ERISA § 105, 29 U.S.C. § 1025**
**Against WMATA on behalf of the Class**

92.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**A.  Summary Plan Description & Summary of Material Modifications**

93.    ERISA § 101(a), 29 U.S.C. § 1021(a) mandates that the administrator of each benefit plan cause an SPD to "be furnished to participants and beneficiaries as provided in

[ERISA 104(b), 29 U.S.C. §] 1024(b)" and include the information set forth in ERISA § 102(a) & (b).

94.     DOL Regulation, 29 C.F.R. § 2520.102-3, governing the "contents of the summary plan description," requires that "the summary plan description must accurately reflect the contents of the plans" and sets forth specific information that must be required in the SPD.

95.     Pursuant to ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1), the Plan Administrator was required to furnish a current version of the SPD and any modifications and changes (A) to new participants within ninety (90) days after that person became a participant (or a beneficiary once he first receives benefits) or (B) to every participant (and beneficiary) within one-hundred and twenty (120) days (i) after the plan is established and then (ii) with an updated copy of an SPD to the extent that there had been changes within the last five (5) years concerning information described in 29 U.S.C. § 1022 or even if there have been no amendments, every ten (10) years.

96.     The purpose of requiring an administrator to provide an SPD is, as explained in S. Rep. No. 93-127, at 27 (1974), "to provide specific data to participants and concerning the rights and benefits they are entitled to under the plans and the circumstances which may result in their not being entitled to benefits."

97.     At no time has WMATA provided Plaintiffs or any member of the Class with a Summary Plan Description with respect to the Retirement Plan or the Transit Plan that meets the requirements of ERISA § 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

98.     Because WMATA has been the Plan Administrator of the Retirement Plan and the Transit Plan at all relevant times, WMATA violated ERISA § 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

22

### B.  Annual Reports

99.    At no time has WMATA filed an annual report with respect to the Retirement Plan or the Transit Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, nor has it filed a Form 5500 and associated schedules and attachments which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

100.    Because WMATA has been the Plan Administrator of the Retirement Plan and the Transit Plan at all relevant times, WMATA has violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Retirement Plan and/or the Transit Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, nor Form 5500s and associated schedules and attachments that the Secretary has approved as an alternate method of compliance with ERISA § 103, 29 U.S.C. § 1023.

### C.  Summary Annual Reports

101.    At no time has WMATA furnished Plaintiffs or any member of the Class with summary annual reports with respect to the Retirement Plan or the Transit Plan in compliance with ERISA § 104(b)(3), 29 U.S.C, § 1024(b)(3), and regulations promulgated thereunder.

102.    Because WMATA has been the Plan Administrator of the Retirement Plan and the Transit Plan at all relevant times, WMATA has violated ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiffs or any member of the Class with summary annual reports with respect to the Retirement Plan and/or the Transit Plan in compliance with ERISA § 104(b)(3), 29 U.S.C, § 1024(b)(3), and regulations promulgated thereunder.

### D.  Pension Benefit Statements

103.    ERISA § 105(a), 29 U.S.C. § 1025(a), requires the administrator of a defined benefit plan to furnish a pension benefit statement to plan participant (i) at least once every three

years to each participant entitled to a non-forfeitable benefit during their employment and (ii) upon the written request to a plan participant or beneficiary.

104. At no time has WMATA furnished Plaintiffs or any member of the Class with a pension benefit statement with respect to the Retirement Plan or the Transit Plan pursuant to ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

105. Because WMATA has been the Plan Administrator of the Retirement Plan and the Transit Plan at all relevant times, it has violated ERISA § 105(a)(1) and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that WMATA failed to provide Plaintiffs and each Class member with the pension benefit statements required by ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

### E. Funding Notice

106. ERISA § 101(d), 29 U.S.C. § 1021(d), requires an employer maintaining a plan that fails to make a required payment to meet minimum funding standards under ERISA, to provide notice to participants and beneficiaries.

107. Based on available information, the current funding status for the WMATA pension plans is around 80%, but in recent prior years has been below that ratio. To the extent that WMATA failed to meet minimum funding standards, WMATA did not issue any notice to participants and beneficiaries as required by ERISA § 101(d).

**COUNT III**
**Failure to Establish the Pension Plans Pursuant to a Written Instrument Meeting the Requirements of ERISA § 402, 29 U.S.C. § 1102 Against WMATA on behalf of the Class**

108. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

24

109. ERISA § 402, 29 U.S.C. § 1102, requires every plan will be established pursuant to a written instrument which will provide among other things "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]." ERISA § 402, 29 U.S.C. § 1102.

110. Although the benefits provided by the Retirement Plan and the Transit Plan have been described in various documents, the Retirement Plan and the Transit Plan have never been established pursuant to a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

111. As WMATA has been responsible for maintaining the Retirement Plan and the Transit Plan and has amendment power over the Pension Plans, WMATA violated ERISA § 402 by failing to promulgate written instruments in compliance with ERISA § 402 to govern the Retirement Plan's and the Transit Plan's operations and administration.

**COUNT IV**
**Failure to Establish a Trust Meeting the Requirements of ERISA § 403, 29 U.S.C. § 1103**
**Against WMATA on behalf of the Class**

112. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

113. ERISA § 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that "all assets of an employee benefit plan shall be held in trust by one or more trustees," that the "trustees shall be either named in the trust instrument or in the plan instrument" described in ERISA § 402(a), 29 U.S.C. § 1102(a), "or appointed by a person who is a named fiduciary."

114.    The assets of the Pension Plans have not been held in trust in compliance with ERISA § 403, 29 U.S.C. § 1103. To the extent that Defendant has purported to hold such assets in trust, the arrangement does not meet ERISA's requirements, including the requirement that trustees be named in the plan instrument or properly appointed by a named fiduciary.

115.    As Defendant WMATA has been responsible for maintaining the Retirement Plan and the Transit Plan and holds amendment authority over them, Defendant WMATA violated § 403 by failing to ensure that the Retirement Plan's and the Transit Plan's assets were held in a trust that complies with ERISA.

## COUNT V
### Violation of ERISA § 209, 29 U.S.C. 1059, Against WMATA as an Employer or Administrator by Plaintiff Cray on behalf of the Class

116.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

117.    ERISA § 209, 29 U.S.C. § 1059, requires every employer to maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees.

118.    As illustrated by the experience of Plaintiff Cray, WMATA has failed to maintain adequate records as required by ERISA § 209, sufficient to determine the benefits due.

119.    By failing to maintain adequate records, WMATA violated ERISA § 209.

## COUNT VI
### Violation of ERISA § 205, 29 U.S.C. § 1055
### Against WMATA by Plaintiff Wingo on behalf of the Class

120.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

121.    ERISA § 205(a)(1), 29 U.S.C. § 1055 requires each defined benefit pension plan benefit under ERISA payable to a vested participant "shall be provided in the form of a qualified

26

joint and survivor annuity." ERISA § 205(c)(1)(a)(1) allows participants to elect "to waive the qualified joint and survivor annuity form of benefit," but ERISA § 205(c)(2)(A)(i) and its applicable regulations requires consent of the spouse of the participant for such a waiver to take effect.

122.    Plaintiff Wingo has been denied benefits due to a nonconsensual modification of her late husband's retirement elections. Under ERISA § 205(a)(1), Plaintiff Wingo was and is entitled to have benefits to be paid in the form of a qualified joint and survivor annuity. As she did not consent to the election of another form of benefit pursuant to ERISA § 205(c)(2)(A)(i), Plaintiff Wingo is entitled to a survivor annuity as a result.

123.    As illustrated by the experience of Plaintiff Wingo, WMATA operates its Pension Plans without requiring qualified joint and survivor annuity and without requiring spousal consent to obtain a benefit other than a joint and survivor annuity.

124.    By administering its Pension Plans in a manner that complies with ERISA § 205 and paying benefits other than the form of a qualified joint and survivor annuity unless a spouse consents, WMATA has violated ERISA § 205, 29 U.S.C. § 1055.

## COUNT VII
### Violation of ERISA § 204(g), 29 U.S.C. § 1054(g)
### Against WMATA by Plaintiff Cray on behalf of the Class

125.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

126.    ERISA § 204(g), 29 U.S.C. § 1054(g), prohibits plan amendments that decrease accrued benefits.

127.    Upon information and belief, Plaintiff Cray and other members of the Class have been subjected to an unlawful benefit cutback in violation of ERISA by the subsequent change in the terms of the plan.

128.    Plaintiff Cray was vested under the terms of the Retirement Plan and/or the Transit Plan operative at the time he left the WMATA Special Police. He is entitled under ERISA to have the terms of the Retirement Plan and/or the Transit Plan in effect at that time of his employment applied to him. Under the vesting rules applicable at the time of his employment with WMATA during the 1980s, Plaintiff Cray is entitled to receive retirement benefits.

129.    By adopting and enforcing amendments that decreased accrued benefits, WMATA has violated ERISA § 204(g).

**COUNT VIII**
**Failure to Establish a Claims Procedure in Violation of ERISA § 503, 29 U.S.C. § 1133Against Defendant WMATA on behalf of the Class**

130.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

131.    ERISA § 503, 29 U.S.C. § 1133, and detailed regulations that have been promulgated thereunder by the Secretary of Labor codified at 29 CFR § 2560. 03-1, provide that each plan must have a claims procedure that meets the requirements of the regulation providing for a procedure for, among other things: filing claims; obtaining information relevant to a claim; adequate notice of claim denials, the reasons therefore, and the procedures for appealing such denials; and standards governing appeals, including who can decide appeals, what information must be provided to those who appeal, and what explanation must be provide for the denial of appeals.

132.    While the Pension Plans have a procedure by which participants file a claim for benefits and appeals, the procedures do not comply with ERISA § 503 and the regulations promulgated thereunder.

133. As Defendant WMATA established and/or maintained the Pension Plans, Defendant WMATA has violated ERISA § 503 by failing to establish a claims procedure for the Plan in compliance with ERISA § 503 and the regulations promulgated thereunder.

**COUNT IX**
**Breach of ERISA Fiduciary Duties Against WMATA by Plaintiffs on behalf of the Class**

134. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

135. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and –

(a)    for the exclusive purpose of:
    i.    providing benefits to participants and beneficiaries; and
    ii.    defraying reasonable expenses of administering the plan;
(b)    with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; [and]
(d)    in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [Title I of ERISA] and [Title IV].

136. As fiduciary with respect to the Retirement Plan and the Transit Plan, WMATA had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Having the authority to enforce the provisions of ERISA at those respective times, ERISA § 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a)(1)(A)-(D), imposed on WMATA the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Retirement Plan and the Transit Plan.

137. WMATA has never enforced any of the provisions of ERISA with respect to the Retirement Plan and the Transit Plan.

138. By failing to enforce the provisions of ERISA, WMATA breached the fiduciary duties that they owed to Plaintiffs and the Class.

139.    WMATA also breached the fiduciary duties that they owed to Plaintiffs Cray and Wingo, and the Class, by failing to prudently preserve relevant employment records and/or the Retirement Plan and the Transit Plan's records.

**COUNT X**
**Benefit Claim pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) Against Defendant WMATA by Plaintiffs Individually**

140.    ERISA § 502(a)(l)(B), 29 U.S.C. §1132(a)(l)(B), provides that at participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

141.    Once the Retirement Plans are reformed, as set forth above, to comply with ERISA as a defined benefit pension plan, Plaintiffs are also entitled to a declaration clarifying their right to receive benefits from the Plan.

142.    As ERISA § 502(a)(1)(B) does not limit the universe of defendants who can be sued, as explained in *Chevalier v. BAE Systems, Inc.,* No. 23-1651 (CKK), 2025 WL 870342, at *4 (D.D.C. Mar. 20, 2025), a "defendant may be subjected to liability under [ERISA §] 1132(a)(1)(B) "if it exercises 'actual control' over the administration of the plan" even if it is not formally named as the plan's administrator and is not the plan itself."

143.    As such, Defendant WMATA should be ordered to cause the Plans to provide benefits to Plaintiffs pursuant to the terms of the Plan as reformed.

**COUNT XI**
**Breach of Contract Against WMATA by Plaintiffs Individually**

144.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

145.    WMATA promised pensions of Plaintiff Cray and Plaintiff Wingo's husband and to pay defined pension benefits upon retirement in exchange for their continued employment.

146.    WMATA as the "employer" made promises to pay to Plaintiffs and/or their spouses, upon retirement, a defined benefit pension in amounts that increased with each year of service.

147.    The promises made in the Retirement Plan and the Transit Plan documents were communicated to Plaintiff Cray and Plaintiff Wingo's husband such that they could reasonably understand that WMATA had made an offer, in exchange for their continued service to pay for their accrued pension benefits and spousal benefits.

148.    Plaintiff Cray and Plaintiff Wingo's husband accepted WMATA's offer by commencing or continuing to work after learning of WMATA's promises to pay pension benefits.

149.    Plaintiff Cray and Plaintiff Wingo's husband's respective work for WMATA constituted consideration for the promises contained in the Retirement Plan and the Transit Plan.

150.    Accordingly, the Retirement Plan and the Transit Plan documents constitute enforceable contracts.

151.    By continuing to work for WMATA, Plaintiffs and the other Class members performed their obligations under the contracts and satisfied the conditions of WMATA's duty to give them their accrued pension benefits.

152.    WMATA breached its obligations under the contracts by denying benefits to Plaintiffs, including (a) as to Plaintiff Cray by adopting or enforcing amendments that reduced previously accrued and vested benefits and by failing to keep proper documentation of his vested services and (b) as to Plaintiff Wingo by failing to pay a survivor annuity and failing to obtain or maintain proper documentation of the benefit owed, including a survivor benefit.

## COUNT XII
**Claim for Unjust Enrichment Against WMATA by Plaintiffs Individually**

153.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

31

154. To the extent that the Retirement Plan and/or the Transit Plan did not create an enforceable contractual relationship between WMATA, WMATA was unjustly enriched by the denial of Plaintiffs' benefits.

155. Plaintiff Cray and Plaintiff Wingo's husband conferred substantial benefits on WMATA as a result of their employment.

156. WMATA promised to pay defined benefit pensions to Plaintiff Cray and Plaintiff Wingo, including a survivor annuity, in order to recruit employees and encourage employees to continue working at WMATA.

157. In reliance in whole or in part on these promises, Plaintiff Cray and Plaintiff Wingo worked for and continued working for WMATA.

158. WMATA benefitted from the contributions of Plaintiff Cray and Plaintiff Wingo's husband.

159. WMATA also avoided the cost of higher employee turnover as a result of Plaintiff Cray and Plaintiff Wingo's husband remaining employees of WMATA. Costs of employee turnover can include: the time of management and human resources personnel devoted to exit interviews and organizing work left behind by departing employees; severance benefits and variable unemployment insurance costs; advertising for replacement employees; the time of management devoted to reviewing applications and conducting interviews and reference checks; the time of managers and co-workers devoted to training new replacement employees; and reduced productivity of replacement employees due to inexperience.

160. Plaintiff Cray and Plaintiff Wingo's husband worked for WMATA relying in whole or in part on their reasonable expectations that WMATA would pay their pension benefits. By working for WMATA in reliance on this reasonable expectation, Plaintiff Cray and Wingo's

husband forewent opportunities to seek alternative employment that would have paid them benefits, including ERISA-covered retirement benefits. Plaintiff Cray and Plaintiff Wingo's husband cannot reverse time to work for an employer that will actually honor its promises to pay pension benefits.

161. As a result of WMATA not honoring its promises to provide the promised pension benefits, Plaintiffs have received and will continue to receive far less income in retirement than they expected and will have been deprived of the opportunity of that lost pension income.

162. Accordingly, WMATA's retention of the benefits described herein would violate fundamental principles of justice, equity, and good conscience.

163. The amount of WMATA's unjust enrichment should be disgorged and paid to Plaintiffs.

### COUNT XIII
### Breach of Common Law Fiduciary Duty Against WMATA by Plaintiffs Individually

164. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

165. Plaintiffs are beneficiaries of the Retirement Plan and/or the Transit Plan.

166. WMATA and the Board of Trustees are trustees within the meaning of the common law of trusts or a fiduciary trust manager or trust protector within the meaning of the common law of trusts.

167. As fiduciaries of the Retirement Plan and the Transit Plan, WMATA and the Board of Trustees owed Plaintiffs a duty of loyalty and duty of prudence.

168. WMATA and the Board of Trustees possess discretionary powers and authority necessary to carry out the provisions of the Retirement Plan and the Transit Plan.

169. As fiduciaries, WMATA and the Board of Trustees, had a duty under the Retirement Plan and the Transit Plan documents to ensure that proper records were being kept as

33

to benefits that were owed and being paid, to ensure that proper documentation reflected benefits that were to be paid, to pay benefits consistent with promises that had been made, to inform beneficiaries about important information or actions that might impair or reduce their benefits.

170.    WMATA and the Board of Trustees breached their fiduciary duties (a) as to Plaintiff Cray by failing to keep adequate records of his service, by enforcing an amendment that reduced his vested benefits, by failing to provide him adequate documents and by deciding to deny his benefits based on those inadequate records, (b) as to Plaintiff Wingo, failing to use reasonable steps to ensure proper records of Mr. Wingo's election, failing to inform her and/or her husband of election as to the form of retirement annuity, deciding to deny Ms. Wingo benefits based on inadequate records.

171.    As a direct and proximate result of the fiduciary breaches by WMATA and the Board of Trustees, Plaintiffs have been deprived of benefits to which they are entitled under the terms of the Retirement Plan and/or the Transit Plan.

172.    WMATA and the Board of Trustees are liable to Plaintiffs for the harm caused by their breaches of fiduciary duties and Plaintiffs are entitled to any appropriate relief available under trust law including surcharge as appropriate.

**COUNT XIV**
**Failure to Provide Documents Upon Request Pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) & ERISA § 404(a)(1)(A), (B), & (D), 29 U.S.C. § 1104(a)(1)(A), (B), & (D) and the Common Law Against WMATA as the Plan Administrator by Plaintiffs Individually**

173.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

174.    ERISA § 104(b)(4), 29 U.SC. § 1024(b)(4), provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy" of the enumerated documents as well as "other instruments under which the plan is established or operated" to the requesting participant or beneficiary within 30 days of the Request.

175.    Pursuant to ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), a participant may sue for the relief provided in ERISA § 502(c), 29 U.S.C. § 1132(c) when a Plan Administrator fails to properly respond to a request made pursuant to ERISA § 104(b)(4).

176.    ERISA § 404, 29 U.S.C. § 1104 requires fiduciaries of ERISA plans to discharge their duties solely in the interest of participants and beneficiaries and (A) for the exclusive purpose of providing benefits to participants and beneficiaries; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

177.    United States Department of Labor Regulation, 29 C.F.R. § 2509.75-8 explains that "[s]ome offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in ERISA § 3(21)(A) of the Act." One such example cited in the Regulation is that the "plan administrator .... must, be the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of ERISA § 3(21) (A)(iii) of the Act." As such "[p]ersons who hold such positions will therefore be fiduciaries."

178.    As ERISA's legislative history explains, the documents contemplated by 104(b)(4) are those that allow "the individual participant [to] know[] exactly where he stands with respect to the plan- what benefits he may be entitled to, what circumstances may preclude from him obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." *Hughes Salaries Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686,690 (9th Cir.

1995) (quoting S.Rep. No. 127, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4863). The Supreme Court has recognized that "Congress' purpose in enacting the ERISA disclosure provisions [was to] ensur[e] that 'the individual participant knows exactly where he stands with respect to the plan.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (quoting H.R. Rep. No. 93-533, 93rd Cong., 1st Sess. 11 (1973)). Courts in the District of Columbia have similarly recognized that "the purpose of these disclosure requirements is to ensure that participants have 'the information necessary to determine [their] eligibility for benefits under the plan, to understand [their] rights under the plan, to identify the persons to whom management of plan funds has been entrusted, and to ascertain the procedures [they] must follow in order to obtain benefits.'" *James v. Int'l Painters & Allied Trades Indus. Pension Plan*, 844 F.Supp.2d 131, 156 (D.D.C. 2012), *aff'd*, 738 F. 3d 282 (D.C. Cir. 2013) (quoting *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 793 (7th Cir. 2009) and awarding penalties for failure to disclose documents). It is also the view of the Department of Labor that, "for purposes of [ERISA § 1024(b)(2) and (4)], any document or instrument that specifies procedures, formulas, methodologies, or schedules to be applied in determining or calculating a participant's or beneficiary's benefit entitlement under an employee benefit plan would constitute an instrument under which the plan is established or operated, regardless of whether such information is contained in a document designated as the 'plan document.'" Dep't of Labor Adv. Op. Letter 96-14a (July 31, 1996).

179.    Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish" by mailing the requested material to "the requesting participant . . . within 30 days after such request" may be liable to the requesting participant in amount of up to $110 per day and the court may order such other relief as the court deems proper.

180.    To the extent that the Plan is exempt from ERISA, the common law of trusts provides that a trustee "has a duty promptly to respond to the request of any beneficiary for information concerning the trust and its administration, and to permit beneficiaries on a reasonable basis to inspect trust documents, records, and property holdings." *Restatement (Third) of Trusts* § 82 (2007); *see also Bogert's The Law of Trusts and Trustees* § 962 ("[A] beneficiary is entitled to demand of the trustee all information about the trust and its administration for which the beneficiary has any reasonable use."). That is because "[t]he books and records of the trustee's administration of the trust do not belong to the trustee, but are part of the trust estate." *Id*. § 961. "Implicit in the duty to provide information to beneficiaries is the duty . . . requiring a trustee to maintain an adequate set of books and records . . . . that show in detail the nature and amount of the trust property and the trustee's administration thereof." *Restatement (Third) of Trusts* § 83 (2007). This duty "may be satisfactorily discharged by simple, orderly forms of bookkeeping and record maintenance," as well as by "disclosing information in an understandable manner that will enable beneficiaries to determine whether the trust is being properly administered." *Id*.

Plaintiff Cray's 104(b) Request to the Retirement Plan

181.    By a letter dated and sent by certified mail on December 3, 2025, pursuant to and referencing ERISA § 104(b) and 404(a)(1), as well as the common law of trusts, Plaintiff Cray requested that the Retirement Plan Administrator provide the documents specified by ERISA 104(b). He advised the Retirement Plan Administrator on what he is entitled to under ERISA and the common law.

182.    The documents Plaintiff Cray requested included: (1) the latest updated summary plan description; (2) any summaries of material modifications to the Plan; (3) the latest full annual report, including a statement of assets and liabilities of the plan and accompanying notes as well

as a statement of income and expenses of the Plan, and accompanying notes; (4) any bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated, and any applicable amendments; (5) any benefit statements for me; (6) any other documents necessary to understand how benefits credited to me under the Plan were calculated; and (7) documents sufficient to identify the fiduciaries of the Plan. He also asked for updated information regarding the Plan, the Trust, or the composition of the Board of Trustees. He also asked for records relating to his pension service and documents in his employment and Plan files, which includes the "pink" document he was given by WMATA employees after reaching 16 months of employment as a Special Police Officer, which memorialized his vested status.

183. Plaintiff Cray received a response on January 29, 2026. However, this response did not respond to all of Plaintiff Cray's requests or provide all documents requested.

184. At a minimum, Defendant WMATA should have provided, but failed to provide Plaintiff Cray with, a copy of the written instrument under which the Retirement Plan was established or operated (colloquially known as the "plan document"), as ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) requires that every ERISA-covered plan "shall be established and maintained pursuant to a written instrument" as well as any amendments to that written instrument. Defendant WMATA also failed to provide Plaintiff Cray with the latest annual report, any bargaining agreement, or other contracts or any other instruments under which the plan is established or operated.

185. By failing to timely provide the documents requested by Plaintiff Cray within 30 days and by failing to provide all of the requested documents, WMATA as Plan Administrator violated ERISA § 104(b)(4) and pursuant to ERISA § 502(c) is liable to and can be so required to

38

pay up to $110 per day to Plaintiff Cray and also be ordered to provide the documents that it failed to provide and is subject to other relief.

186.    By failing to timely provide the documents requested by Plaintiff Cray within 30 days and by failing to provide all of the requested documents, WMATA breached its fiduciary duties pursuant to ERISA § 404(a)(1)(A), (B) & (D), 29 U.S.C. § 1104(a)(1)(A), (B) & (D) and the common law of trusts by failing to provide documents that were requested in his December 3, 2025 request.

<u>Plaintiff Cray's 104(b) Request to the Transit Plan</u>

187.    By a letter dated and sent by certified mail on December 3, 2025, to the Plan Administrator of the Transit Plan, pursuant to and referencing ERISA § 104(b) and 404(a)(1), as well as the common law of trusts, Plaintiff Cray requested that the Transit Plan Administrator provide the documents specified by ERISA 104(b). He advised the Transit Plan Administrator on what he is entitled to under ERISA and the common law of trusts.

188.    The documents Plaintiff Cray requested include: (1) the latest updated summary plan description; (2) any summaries of material modifications to the Plan; (3) the latest full annual report, including a statement of assets and liabilities of the plan and accompanying notes as well as a statement of income and expenses of the Plan, and accompanying notes; (4) any bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated, and any applicable amendments; (5) any benefit statements for me; (6) any other documents necessary to understand how benefits credited to me under the Plan were calculated; and (7) documents sufficient to identify the fiduciaries of the Plan. He also asked for records relating to his pension service and documents in his employment and Plan files, which includes the "pink" document he was given by WMATA employees after reaching 16 months of

39

employment as a Special Police Officer, which memorialized his vested status. Plaintiff Cray did not receive a response, nor did he receive any of the requested documents or information.

189. At a minimum, Defendant WMATA should have provided, but failed to provide Plaintiff Cray with, a copy of the written instrument under which the Transit Plan was established or operated (colloquially known as the "plan document"), as ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) requires that every ERISA-covered plan "shall be established and maintained pursuant to a written instrument" as well as any amendments to that written instrument. Defendant WMATA also failed to provide Plaintiff Cray with the latest annual report, any bargaining agreement, trust agreement, or other contracts or any other instruments under which the plan is established or operated.

190. By failing to timely provide the documents requested by Plaintiff Cray within 30 days and by failing to provide all of the requested documents, the Transit Plan's Administrator violated ERISA § 104(b)(4) and pursuant to ERISA § 502(c) is liable to and can be so required to pay up to $110 per day to Plaintiff Cray and also be ordered to provide the documents that it failed to provide and is subject to other relief.

191. By failing to timely provide the documents requested by Plaintiff Cray within 30 days and by failing to provide all of the requested documents, the Transit Plan's Administrator breached its fiduciary duties pursuant to ERISA § 404(a)(1)(A), (B) & (D), 29 U.S.C. § 1104(a)(1)(A), (B) & (D) and the common law of trusts by failing to provide documents that were requested in his December 3, 2025 request.

Plaintiff Wingo's 104(b) Request to the Transit Plan

192. By a letter dated and sent by certified mail on January 16, 2026, to the Plan Administrator of the Transit Plan, pursuant to and referencing ERISA § 104(b) and 404(a)(1), as

well as the common law of trusts, Plaintiff Wingo requested that the Transit Plan Administrator provide the documents specified by ERISA 104(b). She advised the Transit Plan Administrator on what she is entitled to under ERISA and the common law of trusts.

193.    The documents Plaintiff Wingo requested include: (1) the latest updated summary plan description; (2) any summaries of material modifications to the Plan; (3) the latest full annual report, including a statement of assets and liabilities of the plan and accompanying notes as well as a statement of income and expenses of the Plan, and accompanying notes; (4) any bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated, and any applicable amendments; (5) any benefit statements for her late husband, Mr. Daren Wingo; and (6) documents sufficient to identify the fiduciaries of the Plan.

194.    WMATA has refused to provide her with the requested documents or information.

195.    Plaintiff Wingo has still not been provided the "Transit Employees' Retirement Plan executed November 19, 1945 and effective November 1, 1945" as well as other relevant plan documents.

196.    At a minimum, Defendant should have provided, but failed to provide Plaintiff Wingo with, a copy of the written instrument under which the Transit Plan was established or operated (colloquially known as the "plan document"), as ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) requires that every ERISA-covered plan "shall be established and maintained pursuant to a written instrument" as well as any amendments to that written instrument. Defendant WMATA also failed to provide Plaintiff Wingo with the latest annual report, any bargaining agreement, trust agreement, or other contracts or any other instruments under which the plan is established or operated.

197.    By failing to timely provide the documents requested by Plaintiff Wingo within 30

days and by failing to provide all of the requested documents, WMATA, as Plan Administrator violated ERISA § 104(b)(4) and pursuant to ERISA § 502(c) is liable to and can be so required to pay up to $110 per day to Plaintiff Wingo and also be ordered to provide the documents that it failed to provide and is subject to other relief.

198.    By failing to timely provide the documents requested by Plaintiff Wingo within 30 days and by failing to provide all of the requested documents, the Transit Plan Administrator breached its fiduciary duties pursuant to ERISA § 404(a)(1)(A), (B) & (D), 29 U.S.C. § 1104(a)(1)(A), (B) & (D) and the common law of trusts by failing to provide documents that were requested her January 16, 2026 request.

### ENTITLEMENT TO RELIEF

199.    As a result of the violations of ERISA described in Count II, Plaintiffs and the Class, as Plan participants and beneficiaries, are entitled to sue the Plan Administrator pursuant to ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), for relief afforded by ERISA § 502(c).

200.    As a result of the violations of ERISA described in Counts II and IX, Plaintiffs and the Class, as Plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including recovery for the Plan of any losses to the Plan resulting from each such breach and for such other equitable or remedial relief as the court may deem appropriate.

201.    As a result of the violations of ERISA described in Counts I, III, IV, V, VI, VII VIII, Plaintiffs and the Class, as Plan participants and beneficiaries, are entitled to sue Defendant WMATA pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for appropriate equitable

relief, including ongoing violations of ERISA and to obtain other appropriate equitable relief to redress such violations and/or to enforce the provisions of ERISA.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that judgment be entered against Defendant on each claim and be awarded the following relief:

A.     Declare that the Retirement Plan and the Transit Plan are employee benefit plans within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), are defined benefit pension plans within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and are not governmental plans within the definition of ERISA § 3(32) of ERISA, 29 U.S.C. § 1002(32);

B.     Order WMATA to reform the Retirement Plan and the Transit Plan to bring them into compliance with ERISA and to have the Retirement Plan and the Transit Plan comply with ERISA including as follows:

1. Revising Plan documents to reflect that the Retirement Plan and the Transit Plan are defined benefit plan regulated by ERISA;

2. Requiring WMATA to fund the Retirement Plan and the Transit Plan in accordance with ERISA's funding requirements, disclose required information to the Retirement Plan's and the Transit Plan's participants and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2 and 3 of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85;

3. Reforming the Retirement Plan and the Transit Plan to comply with ERISA's vesting and accrual requirements, claims procedure requirements, invalidating

43

any illegal cutback of benefits and providing benefits in the form of a qualified joint and survivor annuity;

4. Requiring the adoption of an instrument governing the Retirement Plan and the Transit Plan that complies with ERISA § 402, 29 U.S.C. § 1102; and

5. Requiring the establishment of trusts for the Retirement Plan and the Transit Plan in compliance with ERISA § 403, 29 U.S.C. § 1103.

C.    Declare that the Plan Administrator violated ERISA §§ 101, 102, 104, 105, 29 U.S.C. §§ 1021,1022, 1024 and 1025 by failing to provide the required disclosures, including summary plan descriptions, summary of material modifications, pension benefit statements and funding statements to Plaintiffs and the Class;

D.    Order WMATA to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, benefit statements, Summary Annual Reports and Participant Benefit Statements, providing Notices of the Retirement Plan's and the Transit Plan's funding status and deficiencies and providing Plaintiffs with copies of the documents that they requested;

E.    Impose statutory penalties under ERISA § 502(c)(1)(A) and (B), 29 U.S.C. § 1132(c)(1)(A) and (B), in an amount up to $110 per day per participant for each day that the Plan Administrator has failed to provide each of the required disclosures for the Plans to Plaintiffs and the Class, as determined by the Court and permitted under 29 C.F.R. § 2575.502c-1;

F.    Order clarification of rights to future benefits for the Retirement Plan and the Transit Plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. §1102(a)(1)(B);

G.    Ordering WMATA, as a fiduciary of the Retirement Plans, to make the Plans whole for any losses and disgorge any profits WMATA accumulated as a result of fiduciary breaches;

H.      Appointing Independent Fiduciaries to hold the Retirement Plan's and the Transit Plan's assets in trust, to manage and administer the Retirement Plan and the Transit Plan and their assets, and to enforce the terms of ERISA;

I.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on them by ERISA, with respect to the Retirement Plan and the Transit Plan;

J.      Alternatively, if the Court determines that Retirement Plans are "governmental plans" exempt from ERISA, ordering WMATA to pay amounts to Plaintiffs for breach of its contract with Plaintiffs;

K.      Alternatively, if the Court determines that Retirement Plans are "governmental plans" exempt from ERISA, ordering WMATA to disgorge and pay to monies wrongfully obtained or retained and all revenues and profits derived by Defendant as a result of its unjust enrichment;

L.      Alternatively, if the Court determines that Retirement Plans are "governmental plans" exempt from ERISA, ordering WMATA and any other trustees and fiduciaries of the Retirement Plan and the Transit Plan, award any losses or surcharges and disgorge any profits accumulated as a result of breaches of their fiduciary duties under the common law;

M.      Awarding to Plaintiffs attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g) and/or other applicable doctrine;

N.      Awarding to Plaintiffs taxable costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d)(1), and other applicable law;

O.      Awarding to Plaintiffs pre-judgment and post-judgment interest on any amounts awarded pursuant to law; and

P.      Awarding such equitable, injunctive or other relief as the Court may deem appropriate pursuant to ERISA §502(a)(3) or the common law of trusts or any relief to which Plaintiffs are entitled to pursuant to Fed. R. Civ. P. Rule 54(c).

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law and to the extent the Court determines the Retirement Plan and the Transit Plan are not governed by ERISA, Plaintiffs demand a trial by jury for all causes of action and issues for which trial by jury is available.

Dated: July 7, 2026

Respectfully submitted,

R. Joseph Barton (#476510)
THE BARTON FIRM LLP
1633 Connecticut Ave., NW
Suite 200
Washington, DC 20009
Tel: (202) 734-7383
Email: jbarton@thebartonfirm.com

Adam Harrison Garner (MD27648)
THE GARNER FIRM, LTD.
1617 John F. Kennedy Blvd., Suite 1111
Philadelphia, PA 19103
Tel: (215) 645-5955
Email: adam@garnerltd.com

*Attorneys for Plaintiffs*