**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LYMAN W. CRAY, et al.**<br><br>***Plaintiff*,**<br><br>**v.**<br><br>**WMATA RETIREMENT PLAN et al.,**<br><br>***Defendants*.** | **Civil Action No. 1:26-cv-02393-JEB** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants, Washington Metropolitan Area Transit Authority ("WMATA"), WMATA Retirement Plan (the "WMATA Plan"), The Board of Trustees of the Transit Employees' Retirement Plan (the "TERP Committee"), the Board of Trustees of the WMATA Retirement Plan (the "WMATA Trustees"), and Transit Employees' Retirement Plan ("TERP") submit this Memorandum of Law in support of their Motion to Dismiss the Class Action Complaint (the "Complaint") in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## INTRODUCTION

In their Complaint, Plaintiffs primarily allege that WMATA's pension plans are subject to ERISA, eschewing decades of jurisprudence universally holding that WMATA's plans are subject to ERISA's governmental plan exemption. WMATA is an instrumentality and agency of D.C., Maryland, and Virginia created by interstate compact. The WMATA Plan and the TERP are both retirement plans sponsored by WMATA and therefore are both governmental plans

exempt from ERISA. Counts I-X and XIV—all reliant on ERISA—fail as a matter of law and are subject to dismissal under Rule 12(b)(6).

The remaining state law claims (Counts XI-XIII) fare no better. WMATA enjoys the sovereign immunity of each signatory, waived only for contracts and torts committed in the conduct of proprietary functions. Pension administration is governmental and discretionary. The Plan and Trust language further bar the claims by limiting liability absent willful misconduct, neglect, or fraud—none of which is pleaded. The Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND AND RELEVANT ALLEGATIONS[1]

### I. Creation of WMATA And The Plans.

In 1966, Congress approved the Washington Metropolitan Area Transit Authority Compact pursuant to the Compact Clause. Pub. L. No. 89-774, 80 Stat. 1324 (1966). The Compact created a regional public transportation agency for the District of Columbia, Maryland, and Virginia. WMATA became effective in 1967 and operates the region's Metrobus and Metrorail system. The Compact's stated purpose is to create "a regional instrumentality, as a common agency of each signatory party." D.C. Code § 9-1107.01(2)[2]. WMATA was created "as an instrumentality and agency of the signatory parties," and is "a body corporate and politic." D.C. Code § 9-1107.01(4).

The Compact confirms WMATA's public character in Section 78. It declares that the Authority and its Trustees perform "an essential government function," including proprietary, governmental, and other functions exercised under the Compact. D.C. Code § 9-1107.01(78). That declaration is consistent with the Compact's public purpose and regional governmental structure.

---

[1] WMATA generally denies the Complaint allegations.

[2] The District of Columbia, State of Maryland, and Commonwealth of Virginia have each codified the Compact. In the interest of clarity, D.C. Code §§9-1107 *et seq.* is cited in this Motion.

The Compact also addresses employee retirement rights. Section 12(g) authorizes WMATA to create and abolish positions and to fix and provide for the pension and retirement rights of its officers and employees without regard to the laws of the signatories. D.C. Code § 9-1107.01(12)(g). Section 66(d) authorizes WMATA to establish and maintain a system of pensions and retirement benefits for designated officers and employees. D.C. Code § 9-1107.01(66)(d).

Plaintiffs allege that WMATA sponsors and administers the WMATA Plan and the TERP. Compl. ¶¶ 11-14. The WMATA Plan document and the TERP document are attached as Exhibit 1(WMATA Plan) and Exhibit 2 (TERP).[3] Plaintiffs identify both as defined-benefit pension plans and name them as nominal Defendants. (Compl. ¶¶ 13-14.)

**A. <u>Plan Administration.</u>**

The WMATA Plan is administered by the WMATA Trustees, which makes benefit determinations and decides appeals for the WMATA Plan. (Ex. 1, WMATA Plan § 11.03.) The TERP is administered by the TERP Committee. (Compl. ¶¶ 11-14; Ex. 2, TERP § 12.01.) The WMATA Plan states that WMATA adopted and maintains the WMATA Plan for its employees, while the WMATA Plan's designated fiduciaries administer and interpret it and the Trust governs the holding and payment of WMATA Plan assets. (Ex. 1, WMATA Plan § 11 (see generally).)

The Board of Trustees consists of three members, two of which are appointed by the General Manager and Chief Executive Officer of WMATA and one Trustee elected by the Plan

---

[3] In a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the relevant facts are those "alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia, Gov't*, 864 F.3d 671, 678, 431 U.S. App. D.C. 83 (D.C. Cir. 2017) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624, 326 U.S. App. D.C. 67 (D.C. Cir. 1997)). The WMATA Plan and the TERP are central to Plaintiffs' claims and are thus incorporated. *See Infra Doe v. Washington Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020) (a court assessing a motion brought under Rule 12(b)(1) may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction).

participants. (Exhibit 3, WMATA Plan Trust Agreement, Resolution 2003-49.) The Chairman of the Board of Trustees serves at the pleasure of the General Manager and Chief Executive Officer of WMATA. (Exhibit 4, WMATA Plan Trust Agreement, Resolution 2004-23.)

The TERP was originally adopted July 1, 1945, and has been amended and restated multiple times. (Ex. 2, TERP § 1.02.) It is maintained as part of the collective bargaining agreement between WMATA and Local Union 689 of the Amalgamated Transit Union, AFL-CIO ("Local 689"). (Ex. 2, TERP § 1.03.) The TERP Committee, composed of three members appointed by WMATA and three by the Union, administers the TERP. (Ex. 2, TERP §§ 12.01, 12.02.) A quorum for the Committee's meetings requires at least one WMATA-appointed member and one Union-appointed member. (Ex. 2, TERP § 12.04.) WMATA and the union are likewise jointly responsible for appointing a Trustee to administer the Trust. (Ex. 2, TERP § 13.01.)

**B. <u>Plan Funding.</u>**

Both Plans are funded by WMATA, "an interstate compact agency and instrumentality of" the District of Columbia, Maryland, and Virginia, whose Compact requires the Signatories to "include in their respective budgets" and "appropriate or otherwise provide" the amounts necessary to fund its operations. D.C. Code § 9-1107.01(26). The WMATA Plan mandates that "[t]he Authority shall pay the entire remaining cost of the Plan" and contribute "such additional sums as are required to provide the pensions described herein, in accordance with generally accepted actuarial practices." (Ex. 1, WMATA Plan § 2.03.) The TERP likewise requires the Authority to "make contributions to the Fund in amounts necessary, according to sound actuarial principles, to fund the benefits under this Plan and to maintain the actuarial integrity of the Fund," with those contributions "periodically adjusted in accordance with the actuarial valuation produced annually by the Plan actuary" and remitted monthly. (Ex. 2, TERP § 11.01(a), (c), (d)). Once

contributed, those funds are irrevocably dedicated to participants. TERP Section 11.05 provides that "the Authority shall not have any right, title, or interest whatsoever in the Fund" and that all contributions "shall be divested of any interest or claim whatsoever of or by the Authority therein." (Ex. 2, TERP § 11.05).

### C. Express Limitation Of Liability.

The WMATA Plan is clear that neither WMATA nor the Board of Trustees can be held liable, other than for willful neglect or fraud:

> It is expressly understood and agreed by each employee who becomes a Participant hereunder, that except for its or their willful neglect or fraud, neither the Authority nor the Trustees shall be in any way subject to any suit or litigation, or to any legal liability, for any cause or reason or thing whatsoever, in connection with this Trust or its operation, and each such employee hereby releases the Authority and all its officers and agents from any and all liability or obligation.

(Exhibit 5, WMATA Plan Trust Agreement § 10.10; *see also* Ex. 1, WMATA Plan §12.10.) Likewise, the TERP precludes liability for WMATA and its governing Committee:

> Limitation on Liability of Authority and Union. Any person having a right or claim under the Plan shall look solely to the assets of the Fund. Neither the Authority nor the Union (nor any person connected with either the Authority or the Union) shall be liable to any person on account of any claim arising by reason of the provisions of the Plan or of any instrument or instruments implementing its provisions, or for the tax consequences to any Participant, Beneficiary or any other person resulting from participation in the Plan or any distribution therefrom.

Ex. 2, TERP § 15.05.

### D. Plaintiffs And Their Claims.

Plaintiff Lyman W. Cray alleges that he worked for WMATA from November 22, 1982, through December 22, 1986. (Compl. ¶ 32.) He first served as a Special Police Officer and later worked in the Track Department. *Id.* He alleges that he was told that sixteen months of service vested his pension benefit and that he received a document memorializing that status. (Compl. ¶¶ 35-38.) Mr. Cray later sought records and benefit information. In 2023, Plan staff denied his

request for a deferred vested benefit on the ground that he had insufficient credited service. The WMATA Trustees upheld that determination after his appeal. (Compl. ¶¶ 41-49.) Cray contends that WMATA applied the wrong vesting rule and failed to preserve or provide records.

Plaintiff Vivian Wingo is the widow of Daren Wingo, a former WMATA employee who worked for WMATA for more than twenty-five years, from 1996 until 2021. (Compl. ¶ 50.) Plaintiffs allege that Mr. Wingo participated in the TERP and designated Ms. Wingo as his beneficiary. (Compl. ¶ 51.) Plaintiffs allege that Mr. Wingo completed retirement and beneficiary forms in January 2021, later died in 2023, and that the Plan denied survivor benefits after the form was changed to reflect a single-life annuity. (Compl. ¶¶ 52-53.) Ms. Wingo contends that she did not consent to the change and that WMATA has not shown that Mr. Wingo authorized it. (Compl. ¶¶ 50-63.)

Plaintiffs filed this putative class action on July 7, 2026. (Compl. at 1.) Counts I through X and Count XIV invoke ERISA. Count XI asserts breach of contract. Count XII asserts unjust enrichment. Count XIII asserts breach of common law fiduciary duty. The state law counts are pleaded in the alternative if the Plans are governmental plans. Plaintiffs seek declarations that the Plans are subject to ERISA, an order reforming them, statutory penalties, benefits, disgorgement, surcharge, attorneys' fees, costs, interest, and other equitable relief. Every requested remedy depends on the premise that WMATA's administration of the WMATA Plan and the TERP (collectively the "Plans") violated a legal duty that does not apply or cannot be enforced against these Defendants.

**LEGAL STANDARD**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint and should be granted if the complaint fails to "state a claim to relief that is plausible

on its face.*" Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A "court need not accept inferences drawn by [the plaintiff] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A court also need not accept legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678.

In contrast to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(b)(1) imposes on the court an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005). Therefore, claims of sovereign immunity are appropriately decided pursuant to a motion brought under Rule 12(b)(1) because "[s]overeign immunity strips the court of jurisdiction[.]" *Smith v. Scalia*, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014). In suits against governments and their instrumentalities, "[i]f sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.")); *Benton v. WMATA*, 2022 WL 898994, at *3 (D.D.C. 2022) (addressing sovereign immunity as threshold jurisdictional bar). Courts may not find a waiver unless Congress's intent is unequivocally expressed. *Hubbard v. Adm'r. EPA,* 982 F.2d 531, 532 (D.C. Cir. 1992).

When ruling on a Rule 12(b)(1) motion, the court "treat[s] the complaint's factual allegations as true" and affords the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 259

(D.D.C. 2015). However, those factual allegations receive "closer scrutiny" than they do in the Rule 12(b)(6) context. *Id.* Further, "unlike when evaluating a Rule 12(b)(6) motion, a court that is assessing a motion brought under Rule 12(b)(1) may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim." *Doe v. Washington Metro. Area Transit Auth*., 453 F. Supp. 3d 354, 361 (D.D.C. 2020). *See Jerome Stevens Pharm., Inc. v. F.D.A.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). When referencing evidence beyond the pleadings, the court can also "resolve factual disputes concerning jurisdiction." *Smith v. W.M.A.T.A.*, 290 F.3d 201, 205 (4th Cir. 2002).

Because the putative class claims rest on the same deficient theories, they must also be dismissed.[4] *GCDC LLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 4438908, at *1 (D.D.C. Sept. 28, 2021) ("If a named plaintiff's claims fail as a matter of law, the putative class action complaint should be dismissed in its entirety.").

## ARGUMENT

### I. Counts I-X And XIV Fail Because The Plans Are Governmental Plans Exempted From ERISA.

Defendants are entitled to dismissal on Counts I-X and XIV, which depend entirely on ERISA governing the Plans. "Congress enacted ERISA, intending 'to provide uniform federal regulation of employee retirement benefit plans and to make regulation of benefits an entirely federal concern.' Although ERISA's preemption power is broad in creating this uniformity, it stops short when affronted with a 'governmental plan.'" *Hisler v. Gallaudet Univ.,* 344 F. Supp. 2d 29, 41 (D.D.C. 2004).

[4] Because Defendants seek dismissal of the entire complaint based on the deficient theories, they are not raising specific challenges to the class allegations; however, Defendants do not waive any arguments they may have as to the sufficiency of class allegations.

Under ERISA, the term "governmental plan" means "a plan established or maintained for the employees by ... the government of any State or political subdivision thereof, or by any agency or instrumentality [thereof]." 29 U.S.C. § 1002(32). WMATA is a governmental agency established by interstate compact, *see* D.C. Code §§9-1107 *et seq.,* and the WMATA Plan and the TERP are sponsored by a governmental entity—WMATA. *Id.* As such, WMATA, the WMATA Plan, and the TERP are exempt from ERISA. *See* 29 U.S.C. § 1003(b)(1) (exempting governmental plans).

The Compact declares that WMATA and the WMATA Trustees perform "an essential government function," including proprietary, governmental, and other functions exercised under the Compact, which further reinforces the public character already established in D.C. Code § 9-1107.01(2), (4), (78). The Plans are governmental because WMATA established and maintains them for its employees. *See* D.C. Code § 9-1107.01(12)(g) (authorizing WMATA to fix and provide for pension and retirement rights); D.C. Code § 9-1107.01(66)(d) (authorizing WMATA to establish and maintain a pension and retirement system); *see also Sharma v. Wash. Metro. Area Transit Auth.,* 58 F. Supp. 3d 59, 64 (D.D.C. 2014) (the WMATA Plan "makes clear that WMATA maintains the Retirement Plan").

The analysis is the same for the TERP, which was designed to provide retirement income and disability payments for eligible employees of WMATA who are represented by Local 689. TERP § 1.03. Like the WMATA Plan, the TERP is maintained by WMATA for its employees. *See Canady v. WMATA,* 909 F. Supp. 324, 327 (D. Md. 1995) ("Although this Plan is the product of a collective bargaining agreement between a public employer and a union, rather than the direct creation of a governmental entity, it remains a "governmental plan" for ERISA purposes."); *see also Feinstein v. Lewis*, 477 F. Supp. 1256, 1260 (S.D.N.Y. 1976) (municipal and school district

employee welfare plans established in conjunction with labor unions are still governmental plans within the meaning of ERISA). The IRS has also recognized the governmental status of the TERP. On October 27, 2014, the IRS issued a favorable determination letter for the TERP, based on WMATA's assertion that the plan is entitled to be treated as a governmental plan under Section 414(d) of the Internal Revenue Code. (Exhibit 6, IRS Determination Letter at 2.) Section 414(d) defines "governmental plan" identically to 29 U.S.C. § 1002(32).

Courts have uniformly held WMATA exempt from ERISA. *See, e.g., Akins v. WMATA,* 729 F. Supp. 903, 905 n.1 (D.D.C. 1990) ("WMATA is a governmental entity and therefore exempt from the applicable ERISA provisions. The Court grants Mutual's and WMATA's motions for summary judgment with respect to this claim"); *Canady*, 909 F. Supp. at 327 (D. Md. 1995) (holding that "ERISA preemption does not apply because the Plan falls under ERISA's 'governmental plan' exception"); *Ozoema Obuakonwa Onuigbo v. Wash. Metro. Transit Auth.*, No. 22-0071 PJM, 2022 U.S. Dist. LEXIS 173371, at *6-7 (D. Md. Sep. 22, 2022) ("employee benefit plans established and maintained for employees of a state agency are specifically excluded from coverage under ERISA . . . Retirement plans issued by WMATA are exactly this type of plan such that multiple courts have found them to be exempt from ERISA"). Like the retirement plans the court discussed in *Ozoema,* here, the WMATA Plan and the TERP are both retirement plans issued by WMATA that multiple courts have found to be exempt from ERISA. WMATA is conclusively a governmental entity and an unmistakable sponsor of the WMATA Plan and the TERP. Therefore, because the WMATA Plan and the TERP are both governmental plans, both are exempt from ERISA and the claims fail. For these reasons, the Court should dismiss Counts I-X and XIV.

## II. <u>Sovereign Immunity Bars The Remaining Claims.</u>

Defendants are absolutely immune from liability for the claims raised in the Complaint resulting from sovereign immunity conferred by the signatories. Although WMATA, the Plans, the WMATA Trustees, and the TERP Committee are not themselves a state, the immunity recognized by the Eleventh Amendment extends beyond the states themselves to "state agents and state instrumentalities" that are, effectively, arms of a state. *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997).

The D.C. Circuit has held that Congress (including the District of Columbia) and the states involved in the Compact (Maryland and Virginia) have conferred their sovereign immunity upon WMATA. *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997); *Morris v. WMATA*, 781 F.2d 218, 219-220 (D.C. Cir. 1986). *Beebe* and *Morris* reinforce that the Compact waives its sovereign immunity *only* for (i) violations of contracts entered into by WMATA, and (ii) torts committed by WMATA, its Directors, officers, employees, and agents committed in the conduct of proprietary functions, as provided in Section 80 of the Compact. *Beebe*, 129 F.3d at 1287; *Morris*, 781 F.2d at 221. WMATA's sovereign immunity extends to the WMATA Trustees and the TERP Committee because the boards are acting as agents of WMATA and the Plans (the Plans being established by a discretionary action of WMATA).

### A. <u>WMATA Has Sovereign Immunity.</u>

Section 80 of the Compact provides WMATA immunity from liability for all actions except actions based on a contract entered into by WMATA and certain tort actions:

> **80. Liability for Contracts and Torts**
>
> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees, and agent committed in the conduct of any proprietary function, in accordance with the law of the applicable Signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein

> provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

D.C. Code § 9-1107.01(80). Further, Section 12(g) of the Compact, which enumerates WMATA's "general powers," provides that WMATA may ". . . fix and provide for the qualification, appointment, removal, term, tenure, compensation, pension and retirement rights of its officers and employees without regard to the laws of any of the Signatories." D.C. Code § 9-1107.01(12)(g). WMATA has provided for pension and retirement rights of its officers and employees by establishing the Plans. However, no provision in the Plans purports to waive WMATA's sovereign immunity to any further extent than that already waived in Section 80 of the Compact. Section 80 also does not waive claims against the Plans, the WMATA Trustees, or the TERP Committee. Nor does Count XI fall within the contractual waiver because Plaintiffs identify no separate contract entered into by Defendants. Under District of Columbia law, a breach of contract claim requires a valid contract, a contractual obligation, a breach, and damages caused by the breach. *See Benton v. WMATA*, No. 21-CV-1575 (RC), 2022 WL 898994, at *3-4 (D.D.C. Mar. 28, 2022)(dismissing breach of contract claim against WMATA because by the plain language of the WMATA Plan, WMATA cannot be liable for plaintiff's claim for breach of contract and therefore is not a proper defendant).

Nor may Plaintiffs argue that WMATA has the power to "sue and be sued." *Watters v. Wash. Metro. Area Transit Auth.*, 295 F.3d 36, 40 (D.C. Cir. 2002) ("Although the WMATA Compact provides that WMATA may "sue and be sued," Compact § 12(a), we have held that provision to extend only as far as the more specific (and partial) waiver of sovereign immunity contained in section 80 of the Compact"); *Morris*, 781 F.2d at 221 ("[R]eliance on the "sue and be sued" clause would be particularly inappropriate in this case where another section of the Compact,

§ 80, specifically and expressly delineates the scope of WMATA's consent to be sued. That scope is clear: WMATA consents to be sued for torts occurring in the performance of proprietary, but not governmental, functions.").

### B. The Actions Alleged In The Complaint Were In The Performance Of A Governmental Or Discretionary Function.

Even if the underlying facts of the Complaint could be the basis for a tort action, the actions alleged were in the performance of a governmental function, and thus WMATA has not waived its sovereign immunity for liability stemming from these alleged actions. The *Beebe* court held that federal law governs the interpretation of Compact terms where Congress has not so provided, which includes, in the case of WMATA, distinguishing between governmental and proprietary functions. *Beebe*, 129 F.3d at 1288. Further, the D.C. Circuit uses a two-part test to determine whether a particular activity is governmental or proprietary. *Abdulwali v. WMATA*, 315 F.3d 302, 304 (D.C. Cir. 2003). The first step determines whether the activity at issue is "quintessentially governmental," such as the "operation of a police force." *Id.* (citing *Dant v. District of Columbia*, 829 F.2d 69, 74 (D.C. Cir. 1987)). Even if Defendants' actions were not "quintessentially governmental," the next step of the inquiry is whether WMATA's actions were "discretionary." *Id.* (citing *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997)). A "discretionary" act involves "judgment, planning, or policy decisions[,]" *Beatty v. W.M.A.T.A.*, 860 F.2d 1117, 1127 (D.C. Cir. 1988), and is generally considered to be part of an agency's "governmental function[,]" *Beebe*, 129 F.3d at 1287. Therefore, "courts have concluded that WMATA retains sovereign immunity with respect to alleged torts that result from its discretionary acts." *Doe v. Washington Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 363 (D.D.C. 2020). In applying the Supreme Court's interpretation of "discretionary function" to the WMATA, the D.C. Circuit has held that discretionary functions include:

> more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion . . . WMATA should be immune . . . from judicial "second guessing" via tort suits "of legislative and administrative decisions grounded in social, economic and political policy."

*Sanders v. Wash. Metro. Area Transit Auth*., 819 F.2d 1151, 1154 (D.C. Cir. 1987). The United States District Court for the District of Columbia said in *Jones v. WMATA* that "[g]overnmental discretion is defined in connection with liability under the Federal Tort Claims Act as discretion of the executive or the administrator to act according to one's judgment of best course, whether or not that discretion be abused." *Jones v. WMATA*, No. 89-0552 (RCL) 1992 U.S. Dist. LEXIS 11504, at *15 (D.D.C. Aug. 7, 1992). In *Jones*, a claim of employment discrimination was dismissed because "[h]ow WMATA chooses to administer its employees is certainly a discretionary decision and therefore a governmental function." *Id*. at *15. The *Abdulwali* court described the distinction as follows: "We have drawn a distinction between complaints alleging negligent design, which [WMATA's] immunity bars, and those alleging negligent maintenance, to which [WMATA's] immunity does not apply." *Abdulwali*, 315 F.3d at 305. In *Abdulwali*, the court held that the adequacy of a warning sign was a design decision where the Compact "does not prescribe any design specifications for Metro cars, leaving [WMATA] with broad discretion to design all transit facilities and to enter into contracts for their operation and furnishment." *Id*. WMATA's decision to establish the Plans and the WMATA Trustees and the TERP Committee decisions regarding the investment options of the Plans are certainly discretionary – there is no statute, rule, policy, or other provision in the Compact, Plan, or otherwise directing the Board to select certain investment options – making those functions governmental and thus immune from liability under the Compact.

### C. <u>WMATA's Sovereign Immunity Extends To The Plans And Their Administrators.</u>

The Eleventh Amendment extends immunity not only to a state, but also to entities considered "arms of the state." *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001). In *McGinty*, the Second Circuit held that the New York State and Local Employees Retirement System was an arm of the state entitled to sovereign immunity because, among other things, the state was obligated to maintain the system's fiscal integrity, the system performed a statewide function by enabling the state to meet its pension and benefits obligations, and the state law treated the system as a state instrumentality. *McGinty*, 251 F.3d at 96-100. Countrywide, courts have reached the same conclusion. *See Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543-45 (4th Cir. 2014) (holding that state-created pension plans and their group trust were arms of the state entitled to sovereign immunity because the state treasury bore ultimate responsibility for the systems' funding obligations); *Pub. Sch. Ret. Sys. of Mo. v. State Street Bank & Trust Co.,* 640 F.3d 821, 827-30 (8th Cir. 2011) (sovereign immunity extended to Missouri retirement systems); *Ernst v. Rising*, 427 F.3d 351, 359-60 (6th Cir. 2005) (sovereign immunity extended to Michigan judicial retirement system).

In *Hutto*, the Fourth Circuit emphasized that the inquiry looks to whether the state treasury would be "responsible for paying any judgment that might be awarded" and whether the entity is "so connected to the State" that subjecting it to suit would offend the state's dignity as a sovereign. *Hutto*, 773 F.3d at 543. Here, as in *Hutto*, both the sovereigns' treasuries and their dignity as sovereigns are implicated.

1. <u>The Compact's Members Could Be Responsible For Funding A Judgment.</u>

Ultimately, in *Hutto*, the sovereign would be responsible for any funding shortfall, thus making it potentially responsible for a judgment. The same dynamic is at play here. Both Plans are

funded by WMATA, "an interstate compact agency and instrumentality of" the District of Columbia, Maryland, and Virginia, whose Compact requires the Signatories to "include in their respective budgets" and "appropriate or otherwise provide" the amounts necessary to fund its operations. D.C. Code § 9-1107.01(26). The WMATA Plan mandates that "[t]he Authority shall pay the entire remaining cost of the Plan" and contribute "such additional sums as are required to provide the pensions described herein, in accordance with generally accepted actuarial practices." (Ex. 1, WMATA Plan § 2.03.) The TERP likewise requires the Authority to "make contributions to the Fund in amounts necessary, according to sound actuarial principles, to fund the benefits under this Plan and to maintain the actuarial integrity of the Fund," with those contributions "periodically adjusted in accordance with the actuarial valuation produced annually by the Plan actuary" and remitted monthly. (Ex. 2, TERP § 11.01(a), (c), (d).) Once contributed, those funds are irrevocably dedicated to participants. TERP Section 11.05 provides that "the Authority shall not have any right, title, or interest whatsoever in the Fund" and that all contributions "shall be divested of any interest or claim whatsoever of or by the Authority therein." (Ex. 2, TERP § 11.05.)

WMATA's Compact obligates the Signatories to fund its budgets; the Plan and TERP documents obligate WMATA to make whatever contributions are actuarially necessary. If a judgment against these Plans created a funding shortfall, the fiscal burden would inevitably flow upstream from the Plans, through WMATA, to the treasuries of the District of Columbia, Maryland, and Virginia. That is the very definition of functional state liability the Fourth Circuit identified in *Hutto*. The money flowing into the WMATA Plan and the TERP traces directly to the treasuries of three sovereigns and any judgment against the Plans or their administrators would necessarily implicate the treasuries of the Compact's Signatories. Both Plans (and their administrators) thus enjoy WMATA's sovereign immunity.

2. State Dignity Factors Apply Here.

In addition to a sovereign's funding obligation, courts look to whether the "state-dignity factors weigh in favor of finding that [the plans] are arms of the State." *Hutto*, 773 F.3d at 546. Two factors weigh heavily in favor of so finding here: "the degree of control that the state exercises . . . [and] . . . the scope of the entity's concerns—whether local or statewide." *Id.*

As set forth above, WMATA created both Plans and is involved in their administration. *See, e.g.*, *Hutto*, 773 F.3d at 546 (discussing appointment of people who manage the entity). As to the WMATA Plan, the General Manager and Chief Executive Officer selects the majority of the Board of Trustees as well as determines who will be Chairman of the Board of Trustees. (Ex. 3, WMATA Plan Trust Agreement § 8.01, Resolution 2003-49; Ex. 4, WMATA Plan Trust Agreement § 8.02, Resolution 2004-23.) As to the TERP, it is administered by the Committee, half of which are appointed by WMATA. (Ex. 2, TERP §§ 12.01, 12.02.) A quorum cannot occur without a WMATA member's presence and WMATA has equal responsibility for appointing a Trustee. (Ex. 2, TERP § 13.01.)

Furthermore, courts have recognized that "providing for public employees . . . upon retirement is an area of statewide concern [as opposed to local concern]." *Hutto*, 773 F.3d at 548; *Ernst*, 427 F.3d at 361 (6th Cir. 2005) (retirement system's operations have far more in common with a traditional state function than a local one").

WMATA's pension system is definitively governmental. As discussed above, the Compact declares that WMATA and the WMATA Trustees perform "an essential government function," including governmental and other functions exercised under the Compact. D.C. Code § 9-1107.01(78). The Compact places employee pension and retirement rights within WMATA's public personnel authority, which extends sovereign immunity to all Defendants, because

WMATA, the Plans, the WMATA Trustees, and the TERP Committee are all performing essential government functions. *Beebe*, 129 F.3d at 1283 (the court found that WMATA employees do have such immunity "when the conduct at issue falls within the scope of their official duties and the conduct is discretionary in nature").

In *Lombard*, the D.C. Circuit held WMATA and the WMATA Plan immune from a suit challenging a pension decision, including benefits eligibility and retirement calculations. *Lombard v. Wash. Metro. Area Transit Auth.*, No. 01-2475, 2003 U.S. Dist. LEXIS 28771, at *13 (D.D.C. Feb. 21, 2003). The court opined that "[i]t would be contrary to public policy if every erroneous benefit calculation that favored an employee were held to be a binding commitment of a government entity." *Id.* Similarly, in *Sharma*, the court granted defendants' motion for summary judgment "[i]n light of the authorities holding that WMATA enjoys sovereign immunity when it engages in discretionary hiring, employment decisions, and decisions regarding "pension and retirement…". *Sharma*, 58 F. Supp. 3d at 66; *see also Smith v. Washington Metro. Area Transit Auth.*, No. 95-068, 1997 U.S. Dist. LEXIS 4504, 1997 WL 182286, at *4 (D.D.C. Apr. 4, 1997) ("[p]laintiff fails to cite, and the court is not aware, of a single case in which WMATA has been held liable for torts arising from the administration of its personnel system").

**D. <u>The Plans Expressly Preclude Liability.</u>**

The plain language of the Plan and Trust documents defeat the relief sought. Section 12.10 provides that no liability shall attach to or be incurred by the Committee, the Trustees, WMATA employees, or WMATA officers or directors by reason of the terms, conditions, or agreements contained in the Plan or related Agreement. It further protects those actors when they act in good faith reliance on certificates, reports, opinions, valuations, and similar materials. WMATA Plan § 12.10. The WMATA Plan Trust Agreement likewise provides that except for willful neglect or

fraud, neither the WMATA nor the Trustees is subject to suit or legal liability for any cause, reason, or thing connected with the Trust or its operation, and each participating employee releases the WMATA and its officers and agents from liability or obligation. Trust Agreement § 10.10. (Ex. 3, Trust Agreement for the WMATA Plan). Additionally, the TERP provides that no liability attaches to the Retirement Allowance Committee, WMATA employees, WMATA officers and Board members, or Union employees and Executive Board members by reason of the TERP or the related collective bargaining agreement, and protects good faith reliance on professional reports and opinions. (Ex. 2, TERP § 12.07.) It also provides that TERP Committee members are not liable for good faith acts or omissions and are liable only for losses due to willful misconduct. (Ex. 2, TERP § 12.08.) Further, it requires any person with a claim under the TERP to look solely to the assets of the Fund and provides that neither the WMATA nor the Union, nor anyone connected with either, is liable for claims arising from the TERP or implementing instruments. (Ex. 2, TERP § 15.05.) On their faces, the Plans bar Plaintiffs' claims.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and dismiss the Complaint in its entirety, with prejudice, as to the Washington Metropolitan Area Transit Authority, WMATA Retirement Plan, The Board of Trustees of the Transit Employees' Retirement Plan, The Board of Trustees of the WMATA Retirement Plan, and the Transit Employees' Retirement Plan.

Dated: September 28, 2026

Respectfully submitted,

*/s/ Kristina N. Holmstrom*
Kristina N. Holmstrom, AZ023384
* *pro hac vice admitted*
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Tel.: (602) 778-3700
Email: kristina.holmstrom@ogletree.com

James J. Murphy D.C. Bar No. 450432
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
1909 K Street, Suite 1000
Washington, D.C. 20006
Tel.: (202) 263-0178
Email: james.murphy@ogletreedeakins.com

*Counsel for Defendants*
*WMATA Retirement Plan, Washington Metropolitan Area Transit Authority,*
*The Board of Trustees of the Transit Employees' Retirement Plan, the WMATA Retirement Plan, and Transit Employee's Retirement Plan*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2026, I electronically transmitted the foregoing document to the Clerk Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Adam H Garner
THE GARNER FIRM, LTD.
1617 John F Kennedy Blvd.
Suite 1111
Philadelphia, PA 19103
215-645-5955
Email: adam@garnerltd.com

R. Joseph Barton
THE BARTON FIRM LLP
1633 Connecticut Ave. NW
Suite 200
Washington, DC 20009
202-734-5458
Email: jbarton@thebartonfirm.com

*Counsel for Plaintiffs*

*/s/ Kristina N. Holmstrom*
Kristina N. Holmstrom, AZ023384
* *pro hac vice admitted*