**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

LYMAN CRAY and VIVIAN WINGO, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY and THE BOARD OF TRUSTEES of the TRANSIT EMPLOYEES RETIREMENT PLAN and the WMATA RETIREMENT PLAN,

Defendants,

and

WMATA RETIREMENT PLAN AND THE TRANSIT EMPLOYEES' RETIREMENT PLAN,

Nominal Defendants.

Case No.: 1:26-CV-02393-JEB

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 3

I. Summary of the Factual Allegations of the Complaint. ..... 3

A. Plaintiff Lyman W. Cray ..... 3

B. Plaintiff Vivian Wingo ..... 3

C. The WMATA Pension Plans ..... 4

II. Summary of the Claims in the Complaint. ..... 6

ARGUMENT ..... 8

I. Defendants' Exhibits Are Not Properly Considered on This Motion As They Were Not Incorporated By Reference. ..... 9

II. The Complaint Adequately Alleges That the WMATA Plans Are Not Government Plans For Purposes of Counts I-X and XIV. ..... 11

A. Assessing Whether the Complaint Alleges That the WMATA Plans Are ERISA-Covered or Are Subject to a Governmental Exception is Evaluated under Rule 12(b)(6) Not Rule 12(b)(1). ..... 11

B. The Complaint Sufficiently Alleges that the WMATA Plans Do Not Qualify As Governmental Plans Exempt From ERISA. ..... 13

C. Applying the Exception to the WMATA Plans Does Not Serve Purpose of Government Plan Exemption. ..... 18

III. Plaintiffs' Common Law Claims Are Not Barred by Sovereign Immunity. ..... 21

A. Count XI Properly Pleads that WMATA Breached an Enforceable Contract. ..... 23

B. Count XIII Properly Plead that WMATA and the Board of Trustees Breached Its Fiduciary Duty During the Performance of a Proprietary Function. ..... 26

C. Defendants' Purported Contractual Limitations on Defendants' Liability Does Not Bar Plaintiffs' Common Law Claims. ..... 31

IV. Plaintiffs Should Be Granted Leave to Amend if Defendants' Motion is Granted. ..... 33

CONCLUSION ........................................................................................................................ 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulwali v. WMATA.*,
315 F.3d 302 (D.C. Cir. 2003) .......... 27, 28, 29

*Afanasieva v. WMATA*,
588 F.Supp.3d 99 (D.D.C., 2022) .......... 22

*Akins v. WMATA*,
729 F. Supp. 903 (D.D.C. 1990) .......... 16, 17

*Alley v. Resolution Trust Corp.*,
984 F.2d 1201 (D.C. Cir. 1993) .......... *passim*

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) .......... 12

*Audio Fid. Corp. v. Pension Ben. Guar. Corp.*,
624 F.2d 513 (4th Cir. 1980) .......... 24

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) .......... 9

*Beatty v. WMATA.*,
860 F.2d 1117 (D.C. Cir. 1988) .......... 28

*Beckman v. Farmer*,
579 A.2d 618 (D.C. 1990) .......... 26

*Beebe v. WMATA*,
129 F.3d 1283 (D.C. Cir. 1997) .......... 27, 28

*Benton v. WMATA*,
No. 21-cv-1575 (RC), 2022 WL 898994 (D.D.C. Mar. 28, 2022) .......... 25

*Burkhart v. WMATA*,
112 F.3d 1207 (D.C. Cir. 1997) .......... 26

*Canady v. WMATA*,
909 F. Supp. 324 (D. Md. 1995) .......... 16, 17

*Cardoza-Estremera v. Berrios*,
No. 16-2318 (ADC), 2017 WL 3098089 (D. P.R. July 20, 2017) .......... 12

*Cobb v. Del Toro*,
No. 20-cv-3015 (TSC), 2023 WL 6215037 (D.D.C. Sept. 25, 2023) ..... 16

*Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*,
819 F.3d 476 (D.C. Cir. 2016) ..... 13

*Dalehite v. United States*,
346 U.S. 15 (1953) ..... 27

*Dant v. D.C.*,
829 F.2d 69 (D.C. Cir. 1987) ..... 30

*Doe v. WMATA*,
453 F. Supp. 3d 354 (D.D.C. 2020) ..... 28

*Ernst v. Rising*,
427 F.3d 351 (6th Cir. 2005) ..... 26

*Feinstein v. Lewis*,
477 F. Supp. 1256 (S.D.N.Y. 1979) ..... 16

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ..... 34

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
905 F.2d 438 (D.C. Cir. 1990) ..... 8

*Foster v. Kosseff*,
No. 11–CV–5069–TOR, 2013 WL 147822 (E.D. Wash. Jan. 14, 2013) ..... 10

*Garcia v. United States*,
996 F.Supp. 39 (D.D.C. 1998) ..... 26

*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F.Supp.3d 1011 (C.D. Cal. 2015) ..... 10

*Harbor Ins. Co. v. Blackwelder*,
554 So.2d 329 (Ala. 1989) ..... 19

*Hurd v. Ill. Bell Tel. Co.*,
234 F.2d 942 (7th Cir. 1956) ..... 24

*Hutto v. S.C. Ret. Sys.*,
773 F.3d 536 (4th Cir. 2014) ..... 26

*Jones v. WMATA*,
No. 89-0552 (RCL), 1992 U.S. Dist. LEXIS 11504 (D.D.C. Aug. 7, 1992) ..... 28

*Kaplan v. Saint Peter's Healthcare Sys.*,
810 F.3d 175 (3rd Cir. 2015) ....................19

*Kemmerer v. ICI Americas Inc.*,
70 F.3d 281 (3d Cir. 1995)....................24

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................10

*Kross v. W. Elec. Co., Inc.*,
701 F.2d 1238 (7th Cir. 1983) ....................18

*Krupp v. Lincoln Univ.*,
663 F. Supp. 289 (E.D. Pa. 1987) ....................13, 19

*Lombard v. WMATA*,
No. 01-2475, 2003 U.S. Dist. LEXIS 28771 (D.D.C. Feb. 21, 2003) ....................21, 28, 29

*McGinty v. New York*,
251 F.3d 84 (2nd Cir. 2001)....................26

*McGrath v. R.I. Ret. Bd.*,
88 F.3d 12 (1st Cir. 1996)....................24

*Miniter v. Sun Myung Moon*,
736 F. Supp. 2d 41 (D.D.C. 2010)....................23

*Nat'l Rifle Ass'n v. Ailes*,
428 A.2d 816 (D.C. 1981) ....................32

*Neuffer v. Bakery and Confectionery Workers Int'l Union of Am.*,
307 F.2d 671 (D.C. Cir. 1962)....................24

*Nguyen v. United States*,
No. 25-4254 (RDM), 2026 WL 3168595 (D.D.C. Oct. 22, 2026) ....................8

*Onuigbo v. WMATA*,
No. 22-0071 PJM, 2022 WL 4449217 (D. Md. Sept. 23, 2022)....................17

*Owens v. Republic of Sudan*,
412 F.Supp.2d 99 (D.D.C. 2006)....................22

*Page v. Comey*,
137 F.4th 806 (D.C. Cir. 2025)....................9

*Poitier v. Sun Life of Canada*,
No. CIV. A. 98–3056, 1998 WL 754980 (E.D. Pa. Oct. 28, 1998)....................18

*Putnam v. Centerra Grp., LLC*,
No. 25-1272 (JEB), 2026 WL 523024 (D.D.C. Feb. 25, 2026)........8

*Rettig v. Pension Ben. Guar. Corp.*,
744 F.2d 133 (C.A.D.C., 1984)........18

*Rowe v. PChange, LLC*,
No. 22-3098 (JEB), 2024 WL 1655348 (D.D.C. Apr. 17, 2024)........9

*Saba v. Compagnie Nationale Air France*,
78 F.3d 664 (D.C. Cir. 1996)........32, 33

*Sanders v. WMATA.*,
819 F.2d 1151 (D.C. Cir. 1987)........27, 28, 30

*Sanguesa v. WMATA*,
No. CIV. A. 89-3475, 1990 WL 141772 (D.D.C. Sept. 20, 1990)........30

*Sanzone v. Mercy Health*,
954 F.3d 1031 (8th Cir. 2020)........12

*Sharma v. WMATA*,
58 F.Supp.3d 59 72 (D.D.C. 2014)........29, 31, 32

*Smith v. Reg'l Transit Auth.*,
756 F.3d 340 (5th Cir. 2014)........12

*Smith v. WMATA*,
No. 95–0687–LFO, 1997 WL 182286 (D.D.C. Apr. 4, 1997)........29

*Snyder v. Chevron Env't Mgmt. Co.*,
No. 3:23-CV-03738-NJR, 2024 WL 6983077 (S.D. Ill. Sept. 30, 2024)........10

*Souders v. WMATA*,
48 F.3d 546 (D.C. Cir. 1995)........30

*Thomas v. WMATA*,
No. 22-cv-3097 (CRC), 2024 WL 4103706 (D.D.C. Sept. 6, 2024)........22

*Tomaszewski v. Trevena, Inc.*,
482 F.Supp.3d 317 (E.D. Pa. 2020)........10

*United States v. Boyle*,
469 U.S. 241 (1985)........32

*United States v. Gaubert*,
499 U.S. 315 (1991)........27

*Wainwright v. WMATA.*,
903 F.Supp. 133 (D.D.C. 1995) ....................30

*Whetstone v. Howard Univ.*,
No. 23-2409 (LLA), 2024 WL 4164692 (D.D.C. Sept. 12, 2024) ....................17

*Whiteru v. WMATA*,
258 F.Supp.3d 175 (D.D.C. 2017) ....................28

**Statutes**

26 U.S.C.A. § 6651 ....................32

28 U.S.C. § 2680 ....................27

D.C. Code § 1-735.4 ....................21

D.C. Code § 1-909.4 ....................21

DC Code § 1–909.05 ....................21

DC Code § 1-747 ....................21

ERISA § 3, 29 U.S.C. § 1002 .................... passim

ERISA § 4, 29 U.S.C. § 1003 ....................5, 11, 13

ERISA § 102, 29 U.S.C. § 1022 ....................5, 6, 20

ERISA § 104, 29 U.S.C. § 1024 ....................5, 6, 7, 20

ERISA § 105, 29 U.S.C. § 1025 ....................6

ERISA § 204, 29 U.S.C. § 1054 ....................6

ERISA § 205, 29 U.S.C. § 1055 ....................5, 6

ERISA § 209, 29 U.S.C. 1059 ....................6

ERISA § 402, 29 U.S.C. § 1102 ....................6

ERISA § 403, 29 U.S.C. § 1103 ....................6

ERISA § 404, 29 U.S.C. § 1104 ....................7

ERISA § 502, 29 U.S.C. § 1132 ....................6, 7, 21

ERISA § 503, 29 U.S.C. § 1133 ....................7

**Other Authorities**

45 C.F.R. § 160.401 ..........32

1974 U.S.C.C.A.N. 4838 ..........19

1974 U.S.C.C.A.N. 4838 ..........20

1974 U.S.C.C.A.N. 4838 ..........20

S.Rep.No. 93-127, 93d Cong., 1st Sess. 18 (1973)..........18

## INTRODUCTION

The Complaint alleges two sets of claims. First, on behalf of a class of participants and beneficiaries, the Complaint alleges that two defined benefit pension plans sponsored by the Washington Metropolitan Area Transit Authority ("WMATA") are subject to the Employee Retirement Income Security Act ("ERISA") because the WMATA plans do not meet the governmental exception from ERISA coverage, and that WMATA and the Board of Trustees of those plans have violated ERISA in establishing, maintaining and administering those plans. As a result of Defendants improperly maintaining those plans in violation of ERISA, the participants and beneficiaries of those plans have been deprived of their rights and benefits without any meaningful recourse. Applying the test set forth by the D.C. Circuit, which focuses on the employment relationship, the Complaint alleges facts explaining why these WMATA Plans are not exempted from ERISA. While WMATA may be considered a quasi-government agency for some purposes, the Complaint alleges sufficient facts -- including that WMATA employees are not subject to the civil service laws of any state or any other government, and are not part of any government retirement systems – to establish that these are ERISA-covered plans and the governmental exception does not apply. Defendants do not challenge the sufficiency of the factual allegations under the law of the D.C. Circuit.

Instead, Defendants simply assert that WMATA is an "instrumentality and agency of D.C., Maryland and Virginia." But that alone is insufficient to establish the exemption. They also assert that there are "decades of jurisprudence universally holding that WMATA plans are subject to ERISA's governmental plan exemption." But Defendants cite only three such cases in which no party disputed WMATA's assertion of the exemption, the courts did not analyze the issue and the decisions did not cite much apply the applicable test. Indeed, Defendants do not even address

the applicable law of the D.C. Circuit. As they do not address the relevant law or suggest that the Complaint's factual allegations are insufficient to meet the D.C. Circuit's requirements to establish inapplicability of the governmental exemption, Defendants' motion to dismiss the ERISA claims should be denied.

Second, the Complaint alternatively alleges common law claims brought individually by Plaintiffs alleging that WMATA breached its contractual or quasi-contractual obligations and that WMATA and the Board of Trustees breached their fiduciary duties. Defendants do not argue that the Complaint inadequately alleges factual allegations to sufficiently plead the elements of those claims. Instead, Defendants claim that these common law claims are barred by sovereign immunity. But WMATA has expressly waived sovereign immunity for breach of contract claims (which also applies to quasi-contract claims) and for torts, including fiduciary duties, committed by WMATA (or its directors, officers, employees and agents) committed in the conduct of any proprietary function but governmental functions. As pension plans are unilateral contracts, the common law contract and quasi-contract claims are not barred by sovereign immunity. The common law fiduciary breach claims do not challenge governmental functions but allege that WMATA and the Board of Trustees breached their fiduciary duties in connection with proprietary functions. As such, none of these claims are barred by sovereign immunity and as this is their only argument about these claims, Defendants' motion to dismiss these claims should be denied.

Finally, Defendants' arguments illustrate why the governmental exemption under ERISA does not apply to the WMATA plans. Defendants argue that their pension plans are not subject to ERISA and that WMATA and every person associated with WMATA are immunized from any claim about the WMATA pension plans. Accepting that argument would make the benefits promised by WMATA in its pension plans unenforceable by any court under any law. That is

inconsistent with the purpose of the narrow governmental exception under ERISA which was intended to apply only to government plans for which employees' pension benefits were governed by either federal or state laws regulating those plans. Thus, Defendants' arguments should be rejected and their motion to dismiss denied.

## BACKGROUND

### I. Summary of the Factual Allegations of the Complaint.

#### A. Plaintiff Lyman W. Cray

Plaintiff Cray is a former employee of WMATA who was employed as a Special Police Officer from November 22, 1982 to August 24, 1984 and then as a Laborer in the Track Department until December 1986. ECF No. 1 ("Compl.") ¶ 32. As a result of his employment with WMATA, Plaintiff Cray was a participant of the WMATA Retirement Plan ("the Retirement Plan") and the Transit Employees' Retirement Plan ("the Transit Plan"). *Id.* ¶¶ 33, 34.

After Plaintiff Cray submitted a claim for benefits under the Retirement Plan, which was denied on July 10, 2023 by letter dated July 7, 2023. ¶ 47. Plaintiff Cray appealed the denial of benefits on July 26, 2023, which was subsequently denied on October 26, 2023. *Id.* ¶¶ 48-49. The articulated reason for the denial was that he had only 16 months of credited service as a Special Police Officer but that the Retirement Plan required a minimum of five years of credited service to be vested in the Plan. *Id.* ¶¶ 35-40, 47-49. He attempted to obtain records about his service and vesting status and was inconsistently told his records were destroyed (first by flood, then fire ) and then that they existed and that he was vested. *Id.* ¶¶ 41-46.

#### B. Plaintiff Vivian Wingo

Plaintiff Wingo is the designated beneficiary of her late husband, Daren Wingo, who was employed by WMATA from January 9, 1996 to January 31, 2021. Compl. ¶¶ 10, 50, 51. At the

time of his retirement, Mr. Wingo was a Supervisor in the Structure division of the Track and Structures department. *Id.* ¶ 51. As a result of Mr. Wingo's employment with WMATA, he was a participant in the Transit Plan, which is a defined benefit pension plan. *Id.* ¶ 52. Upon retirement Mr. Wingo completed an application for retirement income with a signature dated January 7, 2021, specifically designated his wife, Plaintiff Wingo, as his beneficiary on his designation of beneficiary from with a signature dated January 7, 2021, and elected the "Life Annuity with Cash Refund" option, to provide a lump sum payment to his beneficiary, Plaintiff Wingo, and "Life Annuity" option on his election form with his signature also dated January 7, 2021. *Id.* ¶¶ 53-55.

Soon after Mr. Wingo passed away in 2023, Plaintiff Wingo was notified that the future pension checks had ceased because Mr. Wingo purportedly elected a Single Life Annuity. *Id.* ¶ 57. The Retirement Specialist of the Transit Plan claimed that Mr. Wingo modified his election form on January 12, 2021 and presented Plaintiff Wingo with the supposed modified election form. *Id.* ¶ 59. The purported modified election form "whited out" the check mark next to the Life Annuity with Cash Refund and created a new blank check box next to Single Life Annuity option but Mr. Wingo's signature was not updated and was still dated January 7, 2021. *Id.* ¶ 58. WMATA has not provided any evidence that Mr. Wingo knowingly modified the form, consented to the modified form, or was even aware of the modification to his election form. *Id.* ¶ 63. If the Plan complied with ERISA, Mrs. Wingo would have had to provide written consent to any such waiver of a joint and survivor annuity. *Id.* ¶¶ 121-124.

### C. The WMATA Pension Plans

Congress enacted ERISA to protect interstate commerce and the security of millions of employees and their dependents by providing clear and adequate minimum standards to employee benefit plans. 29 U.S.C. § 1001. ERISA applies broadly to all employee benefit plans

unless specifically exempted. 29 U.S.C. § 1003(a). "Governmental plans" are exempted from ERISA. ERISA § 3, 29 U.S.C. § 1002(32). Governmental plans are defined as plans "established or maintained for its employees by the Government of the United States, by the Government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." *Id.*

Defendant WMATA has claimed that its retirement plans, including the Retirement Plan and the Transit Plan, are governmental plans exempted from ERISA. Compl. ¶ 67. But WMATA was created by compact, not state statute, and its employees are not subject to the civil service laws of Maryland, Virginia, or the District of Columbia (or any state) and do not participate in any governments' retirement systems. *Id.* ¶ 69. WMATA was provided the authority to maintain its own retirement plans separate from any state or federal public retirement system. *Id*

As a result of WMATA claiming its retirement plans fall under ERISA's governmental plan exemption, the Complaint alleges that Plaintiffs and other participants and beneficiaries lack the protection that ERISA provides. Compl. ¶ 82. For example, Plaintiff Wingo would have a right under ERISA to the joint and survivor annuity unless she consented in writing even if Mr. Wingo unilaterally modified his election. Compl. ¶ 4; 29 U.S.C. § 1055. Both Plaintiffs would be entitled to documents and information under ERISA as a participant of the Retirement Plan. Compl. ¶ 4; 29 U.S.C. §§ 1022, 1024. Instead, Mr. Cray has been prevented from seeking information about a vested pension benefit, his own records and whether WMATA changed the terms of the Plan. Compl.¶¶ 181-183, 187-188, 192-195. In response to requests from both Plaintiffs, WMATA refused to provide the terms of the Plans (and other documents) that would allow Plaintiffs to understand their rights and benefits under the Plans. *Id.* ¶¶ 173-198. Under ERISA, WMATA would be required to provide those documents upon request. *Id.*

## II. Summary of the Claims in the Complaint.

The Complaint alleges fourteen claims some of which are brought under ERISA and some under the common law.

First, there are nine ERISA claims brought on behalf of a class: Count I seeks declaratory and equitable relief against WMATA pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3): (i) declaratory relief that the Plans are not governmental plans within the meaning of ERISA § 3(32), 29 U.S.C. § 1002(32), and are subject to Title I and Title IV of ERISA; (ii) an order directing WMATA to bring the Plans into compliance with ERISA; and (iii) a declaration that the Plans must be operated in compliance with ERISA and WMATA must sufficiently fund the Plans under ERISA. Compl. ¶¶ 85-91. Count II alleges that WMATA violated ERISA's disclosure requirements of ERISA § 102, 29 U.S.C. § 1022, ERISA § 104, 29 U.S.C. § 1024 and ERISA § 105, 29 U.S.C. § 1025 by failing to provide summary plan description, summary of material modifications, annual reports, summary annual reports, pension benefit statements, or funding notices to Plaintiffs and the Class. Compl. ¶¶ 92-107. Count III alleges that WMATA violated ERISA § 402, 29 U.S.C. § 1102 by failing to establish the Plans pursuant to an ERISA-compliant written instrument (aka the "Plan Document"). Compl. ¶¶ 108-111. Count IV alleges that WMATA has violated ERISA § 403, 29 U.S.C. § 1103 in failing to establish a trust for the assets of Plans. Compl. ¶¶ 112-115. Count V alleges that WMATA has failed to maintain adequate records sufficient for an employee to determine the benefits due in violation of ERISA § 209, 29 U.S.C. 1059. Count VI alleges that WMATA violated ERISA § 205, 29 U.S.C. § 1055 by failing to provide qualified joint and survivor annuity as a form of benefit and failing to require the spousal consent in order to receive benefits in a form other than a joint and survivor annuity. Compl. ¶¶ 116-124. Count VII alleges that WMATA violated ERISA § 204(g), 29 U.S.C.

§ 1054(g) by adopting and enforcing amendments to its pension plans that unlawfully cutback accrued benefits. Compl. ¶¶ 125-129. Count VIII alleges that the claim procedures under WMATA's Pension Plans violates ERISA § 503, 29 U.S.C. § 1133 and the regulations thereunder. Compl. ¶¶ 130-133. Count IX alleges that WMATA has breached its fiduciary duties in failing to enforce the provisions of ERISA with respect to the Plans and in failing to prudently preserve relevant employment records and the Pension Plans' records. Compl. ¶¶ 134-139.

Second, there are two ERISA claims brought by Plaintiffs individually Count X alleges that Plaintiff Cray and Plaintiff Wingo individually have claims for benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and that WMATA should be ordered to cause the Pension Plans to provide benefits to Plaintiffs pursuant to the terms of the Plan. Compl. ¶¶ 140-143. Count XIV alleges that WMATA violated ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) & ERISA § 404(a)(1)(A), (B), & (D), 29 U.S.C. § 1104(a)(1)(A), (B), & (D) in failing to provide documents upon written request as to Plaintiff Cray and Plaintiff Wingo individually. Compl. ¶¶ 173-198.

Third, there are four common law claims brought individually by Plaintiffs. Count XI alleges that WMATA breached its contractual obligation as to Plaintiff Cray and Plaintiff Wingo regarding their pension benefits. Compl. ¶¶ 144-152. Count XII alleges that WMATA was unjustly enriched by the denial of benefits with respect to Plaintiff Cray and Plaintiff Wingo individually and WMATA's unjust enrichment should be disgorged and paid to Plaintiffs. Compl. ¶¶ 153-163. Count XIII alleges that WMATA and the Board of Trustees have breached their common law fiduciary duties of loyalty and prudence as to Plaintiff Cray and Plaintiff Wingo individually and Plaintiffs are entitled to appropriate relief under trust law including surcharge. Compl. ¶¶ 164-172. Count XIV alleges, in addition to the individual ERISA claim that WMATA

violated the Common Law in failing to provide documents upon written request to Plaintiff Cray and Plaintiff Wingo individually. Compl. ¶¶ 173-198.

**ARGUMENT**

Defendants' motion seeks dismissal under both Rule 12(b)(1) and 12(b)(6). Def. Mem. at 1. "A motion to dismiss under Rule 12(b)(1) … may take one of two forms, either a "facial challenge" or "factual challenge." *Nguyen v. United States*, No. 25-4254 (RDM), 2026 WL 3168595, at *1 (D.D.C. Oct. 22, 2026). Defendants have confirmed that their motion constitutes a facial challenge. Garner Decl. Ex. 1. On a facial challenge, the court "must accept the factual allegations of the complaint as true and must construe them in the light most favorable to the non-moving party." *Nguyen*, 2026 WL 3168595, at *1. Even "[o]ne allegation of the complaint ... may be sufficient to create jurisdiction." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 450, (D.C. Cir. 1990) (finding that where some of the alleged acts were not bared by sovereign immunity that was sufficient to establish jurisdiction).

"As with a 12(b)(1) motion" that presents a facial challenge "a court assessing a 12(b)(6) motion must 'treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Putnam v. Centerra Grp., LLC,* No. 25-1272 (JEB), 2026 WL 523024, at *2 (D.D.C. Feb. 25, 2026) (Boasberg, J.). "[D]etailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion," so long as the complaint "contain[s] sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." *Id.* A Rule 12(b)(6) motion is limited to examining "the facts alleged in the complaint, any documents attached as exhibits thereto, and matters subject to judicial notice." *Id.*

## I. Defendants' Exhibits Are Not Properly Considered on This Motion As They Were Not Incorporated By Reference.

Defendants attach six documents that they contend can be considered on this motion. Def. Mem. at 3 n.3. Those documents purport to be the following (1) the 2014terms of the WMATA Retirement Plan (ECF No. 11-3), (2) the 2012 terms of the Transit Employees Retirement Plan (ECF No. 11-4), (3) a Resolution of the Board of Directors of WMATA adopted September 25, 2003 (ECF No. 11-5), (4) a Resolution of the Board of Directors of WMATA adopted May 20, 2004 (ECF No. 11-6), (5) the Trust Agreement for the WMATA Retirement Plan effective May 18, 1973 (ECF No. 11-7), and (6) an IRS Determination Letter dated October 27, 2014 (ECF No. 11-8). Defendants do not suggest that these documents were ever provided or made available to Plaintiffs nor do they suggest that they are publicly available. *See* Def. Mem. at 3 n.3. In fact, Plaintiffs specifically requested these documents and Defendants refused to provide them to Plaintiffs. Compl. ¶¶ 181-183, 187-188, 192-195. As a result, Plaintiffs' counsel did not have these documents when drafting the Complaint. Barton Decl. ¶ 6.

As this Court has explained, when a "[p]laintiff did not have access to [the document] and was not aware of its existence until receiving it … after [the complaint] was filed," the document is not incorporated by reference into the complaint. *Rowe v. PChange, LLC*, No. 22-3098 (JEB), 2024 WL 1655348, at *5 (D.D.C. Apr. 17, 2024) (Boasberg, J.) (finding documents were not incorporated by reference). In this Circuit, "[t]he incorporation-by-reference doctrine 'permits courts to consider documents not attached to a complaint if they are 'referred to in the complaint and [2] integral to the plaintiff's claim.''" *Page v. Comey,* 137 F.4th 806, 813–14, (D.C. Cir. 2025).

"The incorporation by reference doctrine has limits." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). In *Banneker*, the D.C. Circuit rejected WMATA's attempt

to have the court consider materials that were submitted "only as an attachment to the defendant's motion to dismiss" and even though the complaint "referred to some of the [document'] recitations to show how [plaintiff] learned some facts in the complaint," because the claims were "not based on" the document. *Id.* at 1133-1134. Similarly, the Ninth Circuit has warned against "[t]he overuse and improper application of judicial notice and the incorporation-by-reference doctrine" as it "can lead to unintended and harmful results." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018). "Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint"; absent courts' careful analysis of which documents—and which facts within those documents—are properly considered, this tactic can lead to "premature dismissals of plausible claims." *Id.*

When confronted with defendants submitting documents on a motion to dismiss to which plaintiffs did not have access, courts have rejected those attempts. As another court explained, "the purpose of the integral documents exception is to avoid the situation where a plaintiff 'selected only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'" *Tomaszewski v. Trevena, Inc*., 482 F.Supp.3d 317, 328–29 (E.D. Pa. 2020). It is "not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Id.* As a result, when a plaintiff do not have access to the documents before the complaint was filed, the documents are not incorporated by reference. *Id.* (refusing to consider such document); *Snyder v. Chevron Env't Mgmt. Co.*, No. 3:23-CV-03738-NJR, 2024 WL 6983077, at *4 (S.D. Ill. Sept. 30, 2024) (concluding that where plaintiff "did not possess or have access to either of the attached documents" there is "no such danger" and the documents are not incorporated by reference); *see Gerritsen v. Warner Bros. Entm't Inc*., 112 F.Supp.3d 1011, 1025 (C.D. Cal. 2015) (same); *Foster v. Kosseff*, No. 11–CV–5069–TOR, 2013

WL 147822, at *4 (E.D. Wash. Jan. 14, 2013) (same). As Defendants refused to provide these documents to Plaintiffs despite their request and Plaintiffs did not have access to any documents, these documents are not incorporated into the Complaint.

## II. The Complaint Adequately Alleges That the WMATA Plans Are Not Government Plans For Purposes of Counts I-X and XIV.

Counts I-X and XIV allege that Defendants WMATA and its Board of Trustees, all of which are fiduciaries of WMATA's retirement plans, violated various provisions of ERISA. Compl. ¶¶ 11-12, 85-143, 173-198. Defendants' motion to dismiss these ERISA claims is solely based on their argument that the WMATA plans are excluded from coverage under ERISA pursuant to ERISA § 4(b)(1), 29 U.S.C. § 1003(b)(1) because those plans are "governmental plans" as defined in ERISA § 3(32), 29 U.S.C. § 1002(32). ECF No. 11-2 ("Def. Mem.") at 8-10. In making this argument, Defendants ignore the binding law of this Circuit and the allegations of the Complaint, which not only cites the binding law, but alleges facts as to why this exception does not apply. Compl. ¶¶ 64-84. As Defendants do not address either, their motion to dismiss the ERISA claims in Counts I-X and XIV should be denied.

### A. Assessing Whether the Complaint Alleges That the WMATA Plans Are ERISA-Covered or Are Subject to a Governmental Exception is Evaluated under Rule 12(b)(6) Not Rule 12(b)(1).

Defendants' motion to dismiss is brought under Rule 12(b)(1) and 12(b)(6). Def. Mot. at 1. Defendants do not clearly state whether they are seeking to dismiss the ERISA claims under just Rule 12(b)(6) or 12(b)(1), but their arguments as to Rule 12(b)(1) solely address whether sovereign immunity applies to the non-ERISA state law claims. Def. Mem. at 7.

Defendants' arguments that the ERISA claims (Counts I-X and XIV) should be dismissed is solely based on their assertion that the WMATA plans are subject to the governmental exemption and therefore not covered by ERISA. Def. Mem. at 8-10. "This exemption-based

argument" does "not challenge [plaintiffs'] standing, nor the Court's subject-matter jurisdiction more broadly, but only whether plaintiffs have stated a claim under ERISA." *Cardoza-Estremera v. Berrios,* No. 16-2318 (ADC), 2017 WL 3098089, at *1 (D. P.R. July 20, 2017) (rejecting argument that a dispute about the ERISA church plan exemption was a jurisdictional argument).

An argument about whether a plan is exempt from ERISA "concerns the non-jurisdictional matter of whether, on the merits, plaintiffs can hold defendants liable under ERISA." *Cardoza-Estremera,* 2017 WL 3098089, at *1 (finding the court "clearly has jurisdiction to adjudicate plaintiffs' federal-law [ERISA] claims and related local-law claims"). As the Eighth Circuit explained, after the Supreme Court decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), every Circuit to address the issue has concluded that "either reversed their prior position that ERISA coverage is a jurisdictional issue or" confirmed that, based on *Arbaugh*, that whether a plan was covered under ERISA or whether an exemption applied was a merits issue. *Sanzone v. Mercy Health,* 954 F.3d 1031, 1038 (8th Cir. 2020) (citing cases from the Fifth, Sixth, Ninth and Tenth Circuits); *Smith v. Reg'l Transit Auth.,* 756 F.3d 340, 345 n.5 (5th Cir. 2014) (citing additional cases from the Second and Seventh Circuit and reaching the same conclusion). In determining whether an ERISA church plan exemption applied, the Eighth Circuit clarified its own precedent and held that "whether a plan is an ERISA plan is an element of the plaintiff's case and not a jurisdictional inquiry." *Sanzone,* 954 F.3d at 1040. While the D.C. Circuit does not appear to have addressed the issue, after *Arbaugh*, "any contrary reading of [prior cases] cannot stand." *Smith,* 756 F.3d at 346.

As a result, "Rule 12(b)(6) is the appropriate vehicle for this challenge." *Cardoza-Estremera,* 2017 WL 3098089, at *2 (denying motion to dismiss ERISA claims based on a claimed church plan exemption). Of course, "when faced with a 12(b)(6) motion, the district

court must answer the 'single question' whether the movant met that burden—in other words, whether the complaint 'includes "enough facts to state a claim to relief that is plausible on its face."'" *Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016). Not only does the Complaint adequately allege facts why this exemption does not apply, but Defendants do not bother to address the factual allegations in the Complaint.

**B. The Complaint Sufficiently Alleges that the WMATA Plans Do Not Qualify As Governmental Plans Exempt From ERISA.**

Defendants contend that WMATA's pension plans are not covered by ERISA by asserting that those plans fit in the "governmental plan" exception to ERISA. Def. Mem. at 9. In support, Defendants argue only that WMATA is "governmental agency." *Id.* But under the law of this Circuit, that alone is insufficient to establish the existence of a government plan under ERISA.

ERISA § 4(b)(1), 29 U.S.C. § 1003(b)(1) excludes governmental plans, which it defines as plans "established or maintained for its employees by the Government of the United States, by the Government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). To examine whether a plan is exempted as a governmental plan, the D.C. Circuit does not "engage in an all-purpose characterization" to determine if an entity qualifies as a "governmental agency." *Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1206 (D.C. Cir. 1993). The mere fact that an entity has "quasi-governmental status" or "for some purposes" can "be characterized as an agency or instrumentality of the" government is insufficient. *Id.* at 1204, 1206. The mere fact that an entity is created by legislative act or "state-related institution" is insufficient in and of itself to constitute a government plan. *Krupp v. Lincoln Univ.,* 663 F. Supp. 289, 292 (E.D. Pa. 1987) (finding university's health care plan was not a governmental plan, even though a legislative act had established the university as an instrumentality of the Commonwealth of Pennsylvania and it was a state-related institution).

Instead, "an entity may be governmental for one purpose and nongovernmental for another." *Alley,* 984 F.2d at 1206.

In *Alley*, the D.C. Circuit addressed whether a plan established by an entity – the now-defunct Federal Asset Disposition Association ("FADA") – qualified for the governmental plan exception to ERISA. *Alley*, 984 F.2d at 1202. The D.C. Circuit found that "FADA [ ] operated under federal agency (FSLIC) auspices" and "[f]or some purposes, FADA might properly be characterized [as] an agency or instrumentality of the federal government." *Id.* at 1202, 1205. Another government agency, the FSLIC "owned all of FADA's stock, selected FADA's board of directors and sent a representative to all FADA meetings." *Id.* at 1202. Despite that, the D.C. Circuit held that the agency was not a governmental agency for purposes of ERISA and its benefit plan was subject to ERISA. *Id.* at 1208.

To determine whether an entity – even one with "quasi-governmental status" and for which had "affiliations ... with the federal government" – qualified for the governmental plan exemption under ERISA, the D.C. Circuit held that the focus was on "its employment relationships – the area most relevant for ERISA purposes." *Alley*, 984 F.2d at 1204, 1206, 1207. The *Alley* court explained that "a background assumption underlying the governmental plan exemption [from ERISA] was that public employees exempted from ERISA were in fact covered by some distinctively 'public' employee benefit scheme." *Id.* at 1206. Moreover, "the governmental plan exemption" was not intended to reach and did not apply to "an entity that relates to its employees as would a private business—an entity whose employees are not subject to laws governing public employees generally." *Id.* The mere fact that FADA had "public affiliations" with the "federal government" was insufficient. *Id.* at 1207.

In this Circuit, evaluating whether the governmental plan exception applies focuses on "what should be the core concern for ERISA purposes—the nature of an entity's relationship to and governance of its employees." *Alley,* 984 F.2d at 1205 n.11. This requires evaluating the "terms and conditions of the [employees'] employment," and whether "personnel far more closely resembled private sector employees than they did government workers." *Id.* at 1206. Importantly, FADA employees "were outside the civil service system, and were not subject to personnel rules or restrictions on salaries and benefits imposed generally on federal employees." *Id.* As a result of these employment relationship considerations, the D.C. Circuit held that FADA's plan did not qualify for the governmental exemption and was subject to ERISA. *Id.* at 1207.

Here, Defendants ignore the relevant test set forth in *Alley* – which the Complaint specifically identifies – as to whether WMATA's pension plans meet the definition of a government plan. *Compare* Def. Mem. at 8-10 *with* Compl. ¶¶ 74-76. While Defendants assert that WMATA is a government agency, they do not argue that the Complaint contains inadequate factual allegations of the relevant factors under *Alley* to establish that the WMATA plans are not governmental plans. *See* Def. Mem. at 9-10. Defendants also ignore the specifically pled *facts* in the Complaint as to why the WMATA plans do not meet the standard to meet the governmental plan exception set forth in *Alley*. *See* Compl. ¶¶ 64-84.

As in *Alley,* the Complaint alleges that "WMATA employees are not subject to the civil service laws of Maryland, Virginia, or the District of Columbia." Compl. ¶ 69. WMATA employees are not employees of any government. *Id.* ¶ 70, 77. Likewise, "WMATA employees are not a part of any state government's public retirement plan." *Id.* ¶ 70. "Instead, WMATA is granted the authority to individually maintain and administer its own pension and retirement plans, separate

from state or federal public systems." *Id.* ¶ 69 (citing WMATA Compact § 12(g)). WMATA is also not subject to any state's taxing power. *Id.* ¶ 70. These allegations sufficiently allege that WMATA's plans do not qualify for the governmental plan exemption as set forth by the D.C. Circuit.[1] Indeed, Defendants do not even argue that these factual allegations are insufficient. *See* Def. Mem. at 9.

Instead, Defendants simply assert that "courts have uniformly held WMATA [plans] exempt from ERISA." Def. Mem. at 10. But the cases on which they rely, without any analysis, simply *assume* that the WMATA plans are exempt from ERISA. None of the cases on which Defendants rely address *Alley* – or any other test – to evaluate whether the WMATA plans actually meet the requirements of the governmental plan exception under ERISA. *See id.* In *Akins v. WMATA*, 729 F. Supp. 903 (D.D.C. 1990), the discussion of ERISA's applicability is relegated to a single sentence in a footnote where the court noted that plaintiff "*conced[ed]* that WMATA is a governmental entity and therefore exempt from the applicable ERISA provisions." *Id.* at 905 n.1 (emphasis added). In *Canady v. WMATA*, 909 F. Supp. 324 (D. Md. 1995), the court simply relied on *Akins* to summarily conclude that "the Plan falls under ERISA's 'governmental plan' exemption." *Id.* at 327.[2] Nothing in the discussion in *Canady* suggests that any party had argued

[1] The D.C. Circuit rejected the test articulated by the Second Circuit because it found that those six criteria were not helpful. *Alley*, 984 F.2d at 1205 n.11. Defendants have not argued that the criteria in *Alley* should not apply or that some other test should apply. Def. Mem. at 9-10. Nor can they do so on reply. *Cobb v. Del Toro*, No. 20-cv-3015 (TSC), 2023 WL 6215037, at *7 (D.D.C. Sept. 25, 2023) (finding that where defendant did not raise an argument in its motion to dismiss, it could not "now add new arguments by way of reply brief."). Even if they did, the Complaint also alleges why the criteria in other tests are also met. *See* Compl. ¶¶ 68-84.

[2] The *Canady* court also cited *Feinstein v. Lewis,* 477 F. Supp. 1256, 1261 (S.D.N.Y. 1979), but to address an entirely different issue: the fact that a plan was "established pursuant to collective bargaining and negotiations" does not matter whether a plan is a governmental plan. *Id.* That issue is not one on which this complaint is based.

that the Plan was an ERISA-covered plan. *Id.*[3] And the *Canady* court did not address *Alley* or any other test whether the WMATA plan actually met the requirements to be a government plan. *Id.* Finally, Defendants cite *Onuigbo v. WMATA,* No. 22-0071 PJM, 2022 WL 4449217 (D. Md. Sept. 23, 2022), a case brought by a *pro se* plaintiff who did not oppose or otherwise contest WMATA's dispositive motion, where the court simply relied solely on *Akins* and *Canady* to summarily conclude in one sentence that the WMATA retirement plan was exempt from ERISA. *Id.* at *3. In short, the "multiple courts" that Defendants assert have "found [WMATA plans] to be exempt from ERISA" constitute three decisions in which the issue was not contested and which simply summarily concluded that WMATA plans were exempt from ERISA. *Id.* None of them addressed a complaint that alleged facts explaining why the WMATA plans do not meet the requirements of a government plan as set forth by the D.C. Circuit.

Defendants also attach an IRS determination letter to suggest this supports their argument that the WMATA plans are governmental plans. Def. Mem. at 10 (citing Def. Ex. 6). But as another court in this District explained, it is improper to consider an "IRS's determination letter" on a motion to dismiss. First, "while [a] court may take judicial notice of 'information posted on official public websites of government agencies,'" in connection with a motion to dismiss, "the IRS's determination letters regarding the Plan are not such documents." *Whetstone v. Howard Univ.,* No. 23-2409 (LLA), 2024 WL 4164692, at *7 n.3 (D.D.C. Sept. 12, 2024). Second, "[b]y their own terms, IRS determination letters are not binding." *Id.* Finally, in this case, the IRS did not determine that the WMATA Transit Plan was a governmental plan, but instead issued a determination letter

[3] While the complaint from this 1995 case is not available, the docket shows that Plaintiff filed the case in state court, which suggests that Plaintiff did not allege that this was an ERISA-covered plan and as it is unlikely that WMATA did, the sparse analysis by the Court was simply to independently assess jurisdiction.

that *assumed*, "based solely on [WMATA's] assertion that the plan is entitled to be treated as a Governmental Plan under [IRC] § 414(d)." Ex. 6 at 2. Not only would it be improper to consider this letter on this motion to dismiss, but the letter does not suggest the IRS has expressed any opinion about whether the WMATA plans are governmental plans or are exempt from ERISA.

### C. Applying the Exception to the WMATA Plans Does Not Serve Purpose of Government Plan Exemption.

One principle of statutory construction is "that remedial statutes are to be liberally construed to effectuate their purposes." *Rettig v. Pension Ben. Guar. Corp.*, 744 F.2d 133, 155 n.54 (C.A.D.C., 1984). "There can be no doubt that ERISA … is a remedial statute." *Id.; see* 29 U.S.C. § 1001(b). Congress expressly intended that ERISA should be broadly construed in favor of employees and exemptions be interpreted narrowly.

> It is intended that coverage under the Act be construed liberally to provide the maximum degree of protection to working men and women covered by private retirement programs. Conversely, exemptions should be confined to their narrow purpose.

S.Rep.No. 93-127, 93d Cong., 1st Sess. 18 (1973); U.S.Code Cong. & Admin.News 1974, p. 4854. Courts have consistently recognized the same. Rettig, 744 F.2d at n. 54 ("[C]overage under [ERISA] should be liberally construed to provide the maximum degree of protection to working men and women ... [while] exemptions should be confined to their narrow purpose."); *Kross v. W. Elec. Co., Inc.,* 701 F.2d 1238, 1242 (7th Cir. 1983) ("ERISA is thus a remedial statute, the coverage of which should be liberally construed, and exemptions from which should be confined to their narrow purpose."). Consistent with that, the governmental exception to ERISA is read narrowly to include "organizations traditionally characterized as governmental organizations" but not "to include organizations having some significant relationship with a government but not themselves viewed as governmental." *Poitier v. Sun Life of Canada*, No.

CIV. A. 98–3056 , 1998 WL 754980, at *1 (E.D. Pa. Oct. 28, 1998); *Harbor Ins. Co. v. Blackwelder*, 554 So.2d 329, 333 (Ala. 1989) (explaining that "the 'governmental plan' exception was contemplated as a narrow exception to the otherwise expansive coverage of ERISA" to find an entity was not subject to the exception).

"Congress contemplated a fairly narrow exception to ERISA for plans 'established by state and local governments' to cover 'municipal and state employees.'" *Krupp,* 663 F. Supp. at 292. It was not intended to "expand the range to include organizations having some significant relationship with a government but not themselves viewed as governmental." *Id.* "[T[he legislative history does suggest … Congress' expectation that 'governmental plans,' though not governed by ERISA, would be controlled by a comprehensive, legislatively-established scheme." *Alley,* 984 F.2d at 1206. "A background assumption underlying the governmental plan exemption, then, was that public employees exempted from ERISA were in fact covered by some distinctively 'public' employee benefit scheme." *Id.* The WMATA plans are not a "public" employee benefit scheme. Compl. ¶¶ 641-84. By contrast, "[p]lans of all non-profit institutions, with the exception of religious organizations, [are] subject to [ERISA] in order to provide the employees of these institutions with protection equal to the protection of employees of profitmaking organizations." 1974 U.S.C.C.A.N. 4838, 4854.

Broadly construing these plans "to be exempt 'would achieve quite the opposite' result of the canon directing [courts] to construe exemptions narrowly." *Kaplan v. Saint Peter's Healthcare Sys.,* 810 F.3d 175, 182 (3rd Cir. 2015). In *Alley*, the D.C. Circuit recognized that the entity's "affiliations are with the *federal* government," but narrowly construed the exemption after explaining that there is "no entity that escapes ERISA's reach due to its federal character, yet is not governed by federal civil service laws or any other public employment benefits

scheme." *Alley*, 984 F.2d at 1207. The *Alley* court considered it "anomalous … to characterize [an entity] as an instrumentality of the United States Government and then, on the basis of its *federal* character, expose it to a disparate array of *state*-based common law and statutory claims." *Id.* That concern applies equally here as the WMATA plans and its fiduciaries would be subject to array of state laws as WMATA operates in and its employees often simultaneously work in three jurisdictions and its employees, like Mr. Cray, may retire in another jurisdiction entirely. *E.g.* Compl. ¶¶ 9-10 (alleging that Mr. Cray worked in D.C. but retired to North Carolina and Ms. Wingo resides in Virginia).

Defendants propose to eliminate this issue by characterizing WMATA as agency or instrumentality of a multiple states and then claim they are immune from suit under either ERISA or any law that could be enforced by employees to protect their pension rights. *See* Def. Mem. at 5-16. Such a result is inconsistent with Congressional purpose as to the narrow exclusion for government employees covered by a public benefits scheme. *Supra*. § Argument I.C. As ERISA's legislative history illustrates, Congress included at least two important enforcement mechanisms for employees: *First,* ERISA provides employees with the ability to obtain information about the plan and its fiduciaries to enforce their rights. 1974 U.S.C.C.A.N. 4838, 4863 (explaining that "the safeguarding effect of the fiduciary responsibility section will operate efficiently only if fiduciaries are aware that the details of their dealings will be open to inspection, and that individual participants and beneficiaries will be armed with enough information to enforce their own rights as well as the obligations owed by the fiduciary to the plan in general."); 29 U.S.C. §§ 1022, 1024(b). *Second,* ERISA allows participants and beneficiaries with a "full range of legal and equitable remedies to ensure effective enforcement of fiduciary responsibilities" "recovery of benefits due to participants." 1974 U.S.C.C.A.N.

4838, 4871; *see* 29 U.S.C. § 1132(a)(1)-(3). If the WMATA plans were actually, for example, D.C. government plans, they would be subject to disclosure provisions at least equal to ERISA and nearly identical enforcement provisions as under ERISA. D.C. Code § 1-735.4 (requiring disclosure to participants and beneficiaries for most DC employee pension plans); DC Code § 1-747 (allow participants and beneficiaries to enforce the terms of the plan and fiduciary duties and other relief); D.C. Code § 1-909.4 (requiring disclosure to participants and beneficiaries for DC police, fire and teacher retirement systems); DC Code § 1–909.05 (requiring public disclosure of records of DC retirement systems). Thus, Defendants' argument that these plans are not subject to the laws of any state illustrates that WMATA's plans are not government plans.

## III. Plaintiffs' Common Law Claims Are Not Barred by Sovereign Immunity.

Counts XI through XIII alternatively allege claims, for Plaintiffs individually, that WMATA breached its contracts with these Plaintiffs (Count XI), was unjustly enriched (Count XII),[4] and/or that WMATA and the Board of Trustees breached their common law fiduciary duties (Counts XIII and XVI)[5] in the event that the WMATA plans are not covered by ERISA. Compl. ¶¶ 5, 144-172. Defendants' motion to dismiss these common law claims is solely based on their argument that WMATA (and anyone associated with WMATA including its Plans) has sovereign immunity from suits under any law that would allow employees to enforce their rights regarding WMATA's pension plans. Def. Mem. at 10-11.

---

[4] Defendants do not actually address Count XII (the unjust enrichment claim). But as Defendants own case explains, "judicial decisions of the D.C. Court of Appeals have treated promissory estoppel as a contract claim and permitted such claims against the District of Columbia." *Lombard v. WMATA*, No. 01-2475, 2003 U.S. Dist. LEXIS 28771, at *11 (D.D.C. Feb. 21, 2003). As both are quasi-contractual claims, the same logic applies.

[5] Count XIV alleges a disclosure claim under both ERISA and the common law. Defendants do not address Count XIV, but the same rationale applies to the common law claims for both Count XIII and XIV.

"[S]overeign immunity is an affirmative defense, so the party claiming immunity bears the burden of proof." *Thomas v. WMATA,* No. 22-cv-3097 (CRC), 2024 WL 4103706, at *2 (D.D.C. Sept. 6, 2024) (quotations omitted) (denying WMATA's motion for summary judgment on this basis). "When a defendant files a motion to dismiss for lack of subject-matter jurisdiction," then the "defendant claiming sovereign immunity in a motion to dismiss 'bears the burden of proving' they qualify for it." *Afanasieva v. WMATA*, 588 F.Supp.3d 99, 105 (D.D.C., 2022) (quoting *Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789, 796 (D.C. Cir. 2021) and denying WMATA's motion to dismiss as to sovereign immunity). It is also defendant's burden to show that "plaintiff's allegations do not bring its case within a statutory exception to immunity." *Owens v. Republic of Sudan*, 412 F.Supp.2d 99, 104 (D.D.C. 2006) (citing *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C.Cir.2000)).

When "defendants do not challenge the truth of the complaint's factual assertions for purposes of the motion to dismiss," then the court must "take plaintiff[s'] factual allegations as true and determine whether they bring the case within any of the exceptions to immunity." *Owens,* 412 F.Supp.2d at 104 (citing *Phoenix Consulting,* 216 F.3d at 40). In such circumstances, "for purposes of a Rule 12(b)(1) challenge asserting sovereign immunity, as they are here, the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts." *Id.* (citing *Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 93 (D.C. Cir. 2002) ("[W]here the defendant contests only the legal sufficiency of plaintiff's jurisdictional claims, the standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief.")). Defendants' motion does not explicitly state that its challenge is a facial attack, but Defendants do not challenge the Complaint's factual allegations and Defendants' counsel have

stated that their attack is a facial attack. Garner Decl. ¶ 3-4 & Ex. 1. Thus, this motion should be resolved on the allegations of the Complaint alone.

As Defendants acknowledge, the WMATA Compact provides that WMATA "shall be liable [1] for its contracts and [2] for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function ... but shall not be liable for any torts occurring in the performance of a governmental function." Def. Mem. at 11-12 (quoting D.C. Code § 9–1107.01(80)). Counts XI, XII, XIII and the common law claim in Count XIV readily fit into these exclusions to WMATA's sovereign immunity.

**A. Count XI Properly Pleads that WMATA Breached an Enforceable Contract.**

Count XI alleges that WMATA entered into contracts with Plaintiffs and breached those contracts. Compl. ¶¶ 144-152. "To state a breach of contract claim a plaintiff must allege the following elements: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Miniter v. Sun Myung Moon*, 736 F. Supp. 2d 41, 49 (D.D.C. 2010) (citations omitted) (quotations omitted). Count XI pleads all of those elements and Defendants do not argue otherwise.

Defendants argue that "Count XI [does not] fall within the contractual waiver because Plaintiffs identify no *separate contract* entered into by Defendants." Def. Mem. at 12 (emphasis added).[6] Defendants assume, without support, that the Plans themselves are not contracts entered into by WMATA, and that Plaintiffs must identify some other agreement between them and WMATA to establish a contractual duty owed by WMATA. *Id.*

---

[6] Defendants' brief references Defendants other than WMATA and argue "Section 80 does not waive claims against the Plan, the WMATA Trustees or the TERP Committee." Def. Mem. at 12. But Counts XI-XII and XVI explicitly are brought exclusively against WMATA, not any other Defendants. *See* Compl. ¶¶ 144-163, 174-198.

Contrary to Defendants' unsupported assertion, "[a] pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years." *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3d Cir. 1995) (quoting *Pratt v. Petroleum Prod. Mgmt. Emp. Sav. Plan*, 920 F.2d 651, 661 (10th Cir. 1990)); *Hurd v. Ill. Bell Tel. Co.,* 234 F.2d 942, 946 (7th Cir. 1956) (finding that a "pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years"); *see Neuffer v. Bakery and Confectionery Workers Int'l Union of Am.,* 307 F.2d 671, 672 (D.C. Cir. 1962) (agreeing with *Hurd* that "there is no doubt that any rights possessed by [plaintiff] under the [pension] Plan should be accorded judicial protection") *McGrath v. R.I. Ret. Bd.*, 88 F.3d 12, 17 (1st Cir. 1996) (citing numerous cases and concluding that "the principle that a pension plan represents an implied-in-fact unilateral contract is fairly well settled"); *Audio Fid. Corp. v. Pension Ben. Guar. Corp.*, 624 F.2d 513, 517 (4th Cir. 1980) (holding that pension plan was a binding contract between employer and employees).[7] Thus, under well-established law, the WMATA plans are unilateral contracts between WMATA and the plan participants whereby the participants agree to work for WMATA, and WMATA agrees to pay them (or their beneficiaries) pension benefits through the Plans and pursuant to the Plans' terms.

Count XI alleges that WMATA breached its contracts when WMATA failed to have its Plans provide Plaintiffs with the benefits for which they are eligible. WMATA promised retirement benefits to Plaintiffs as set forth in the Plans. Compl. ¶¶ 146-147. By commencing

[7] The Compact is an agreement among D.C., Maryland and Virginia. Compl. ¶¶ 69, 72. It confers upon WMATA the authority to provide "pension and retirement benefits." *Id.* It does not create the Plans. *Id.* Rather, WMATA created the Plans pursuant to the authority granted by the Compact. *Id.* As such, the Plans are not contracts between the states and WMATA. Rather, the Plans were created for the benefit of the participants.

work for WMATA, and by continuing to work for WMATA, Plaintiff Cray and Plaintiff Wingo's husband accepted the offers conveyed by the WMATA Plans. *Id.* ¶ 148. Plaintiff Cray's and Wingo's husband's labor for WMATA constituted consideration. *Id.* ¶149. They performed their obligations and satisfied the conditions of the offer and WMATA had the obligation to pay them the retirement benefits for which they were eligible. *Id.* at ¶ 151. WMATA breached those obligations by denying them benefits to which they were entitled. *Id.* ¶ 152. These allegations are sufficiently state a claim for breach of contract. Defendants have cited no authority or provide any explanation why Plaintiffs would need to identify a *separate* contract to state a breach of the obligation to pay pension benefits. Thus, Defendants' Motion should be denied as to Count XI.

Defendants fail to explain why WMATA has sovereign immunity for the contractual claims. Defendants cite *Benton v. WMATA*, No. 21-cv-1575 (RC), 2022 WL 898994 (D.D.C. Mar. 28, 2022). Def. Mem. at 12. While the *Benton* court dismissed a claim for punitive damages based on sovereign immunity, it dismissed the contractual claim because WMATA was not a proper defendant. *Benton,* 2022 WL 898994, at *3, 5. As Defendants only argue that sovereign immunity bars these common law claims, not that WMATA is an improper defendant, *Benton* does not apply. Indeed, Defendants concede that WMATA "is involved in the[] administration" of these Plans. Def. Mem. at 17.

Defendants also cite to out-of-circuit authority for the proposition that a state retirement plan may be considered an arm of the state if, among other things, a judgment against the plan would be paid out of a state treasury. Def. Mem. at 15. [8] Not only did these cases involve state pension plans and immunity under the Eleventh Amendment that had not been waived, but the

[8] Most of Defendants' discussion address unsupported argument as to why "the Plans (and their administrators …enjoy sovereign immunity." Def. Mem. at 16. But Count XI and XII are brought exclusively against WMATA.

cases generally did not involve contractual claims. *E.g. McGinty v. New York*, 251 F.3d 84, 92 (2nd Cir. 2001) (ADEA claims); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 540 (4th Cir. 2014) (federal constitutional claims); *Ernst v. Rising*, 427 F.3d 351, 363 (6th Cir. 2005) (same).

Finally, Defendants argue that a judgment against WMATA would be required to be funded by DC, Maryland and Virginia. Def. Mem. at 16. But Defendants do not explain how that would be different than any other contractual obligation for which sovereign immunity has been waived and for which WMATA breached its obligations.

### B. Count XIII Properly Plead that WMATA and the Board of Trustees Breached Its Fiduciary Duty During the Performance of a Proprietary Function.

Count XIII alleges that WMATA and the Board of Trustees breached their common law breach of fiduciary duties. Compl. ¶¶ 164-172. Violations of common law fiduciary duty are tort claims. *Garcia v. United States*, 996 F.Supp. 39, 43 (D.D.C. 1998) (rejecting defendant's argument that fiduciary breach claims are "not a 'tort' in the District of Columbia" as erroneous"); *see Beckman v. Farmer*, 579 A.2d 618, 652 (D.C. 1990) (upholding decision to allow plaintiff to "seek damages in tort" as a "partner aggrieved by a fiduciary breach.").

Contrary to Defendants' arguments, Count XIII does not allege that Defendants' breaches of fiduciary duty result from the performance of a governmental function; rather, their breaches arise from a proprietary function. *See* Def. Mem. at 13, To determine whether a function is governmental or proprietary, courts first ask whether the activity amounts to a "quintessential" governmental function, like law enforcement. *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997). Defendants do not appear to contend that the fiduciary breaches alleged in Count XIII occurred in the performance of a "quintessential" government function. Def. Mem. at 13. Courts'

analyses of this issue have almost exclusively turned on the second factor: whether the act is governmental or proprietary. *Id.; see Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997).

"The federal concept of a 'governmental function' in connection with tort liability was defined authoritatively, prior to adoption of the Compact, in the leading case of *Dalehite v. United States*, 346 U.S. 15 (1953), involving the Federal Tort Claims Act, 28 U.S.C. § 2680 (1946)." *Sanders v. WMATA.*, 819 F.2d 1151, 1154 (D.C. Cir. 1987). Governmental functions are those that involve discretionary acts involving social, economic, and political policy. *Dalehite*, 346 U.S. at 32. The "core of the *Dalehite* idea" is that:

> WMATA should be immune—in the words of *Varig Airlines*—from judicial "second-guessing" via tort suits 'of legislative and administrative decisions grounded in social, economic, and political policy" and from courts' 'second-guessing' through private tort suits 'the political, social, and economic judgments of an agency exercising its regulatory function.

*Sanders*, 819 F.2d at 1155 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984) (additional internal citation omitted)).

If a "statute, regulation, or policy specifically prescribes a course of action for the Authority to follow, then no discretion is involved, since the Authority has no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (quotation omitted). In the absence of a prescribed course of action, WMATA's decisions are discretionary if they involve "political, social, [or] economic" choices. *Abdulwali v. WMATA.*, 315 F.3d 302, 304 (D.C. Cir. 2003).

Adopting a policy effectuating the entity's conferred authority is a governmental function. *Id*. Carrying out the policy is a proprietary function. *Abdulwali*, 315 F.3d at 304. The distinction can be thought of as "negligent design" versus "negligent maintenance." *Id*. at 305. As it relates to Count XIII, creating a retirement plan and designing the terms of the plan are

both governmental functions, while implementing or administering those policies according to their terms (e.g. as a fiduciary) is a proprietary function. However, "the non-existence of a policy that governs a particular agency function, or the existence of some amount of discretion within the policy, does not necessarily mean that WMATA enjoys sovereign immunity." *Whiteru v. WMATA*, 258 F.Supp.3d 175, 185 (D.D.C. 2017).

Defendants argue that the fiduciary breach allegations in Count XIII invoke governmental conduct. Def. Mem. at 13-14. Most of the cases that they cite do not address fiduciary breach allegations. *See id*. The cases on which they rely held certain allegations amounted to torts – generally involving personal injury claims – committed *in the course of* governmental conduct. *Id* at 13-14. In all but two of Defendants' cases,[9] the court's ruling regarding whether the alleged acts were proprietary or governmental occurred at the summary judgment stage, after the completion of discovery and with recourse to a full evidentiary record establishing the context, or "course of," the alleged conduct. *Beebe*, 129 F.3d at 1290; *Abdulwali*, 315 F.3d at 303; *Beatty v. WMATA.*, 860 F.2d 1117, 1128 (D.C. Cir. 1988); *Sanders*, 819 F.2d at 1152.

Defendants assert that "[p]ension administration is governmental and discretionary." Def. Mem. at 2. Defendants cite three cases for this proposition. *Id.* at 18. *First,* they cite *Lombard v. WMATA*, No. 01-2475, 2003 U.S. Dist. LEXIS 28771 (D.D.C. Feb. 21, 2003). On summary judgment, the *Lombard* court concluded that WMATA and the individual trustees were "immune under the Compact for the tort claims based on WMATA's decisions regarding which employees

[9] The first exception is *Doe v. WMATA*, 453 F. Supp. 3d 354, 366 (D.D.C. 2020), which held specifically that the *design* of WMATA's train cars is a governmental function as a matter of law. The second is *Jones v. WMATA*, No. 89-0552 (RCL), 1992 U.S. Dist. LEXIS 11504, at *15 (D.D.C. Aug. 7, 1992) in which the court dismissed D.C. Human Rights employment discrimination claims by concluding that how "WMATA chooses to administer its employees is certainly a discretionary decision and therefore a governmental function." *Id.*

are eligible [as participants] under the retirement plan and when and how to amend the plan." *Id.*, 2003 U.S. Dist. LEXIS 28771, at *10. But those are not the fiduciary breaches alleged here. *See* Compl. ¶¶ 164-172. *Second*, Defendants cite *Sharma v. WMATA*, 58 F.Supp.3d 59 72 (D.D.C. 2014), which was also decided on summary judgment and held only that breach of trust claims against "individual WMATA employees" were "barred by the doctrine of sovereign immunity." *Id.* at 66-67. But Count XIII alleges no claims against individual WMATA employees, but only against WMATA and the Board itself. Compl. ¶¶ 164-172. *Finally,* Defendants cite *Smith v. WMATA*, No. 95–0687–LFO, 1997 WL 182286 (D.D.C. Apr. 4, 1997), which was also decided on summary judgment and involved no claims about a pension or retirement plan, but simply various employment claims. *Id.* at *1.

Here Count XIII alleges that WMATA and the Board acted in a proprietary capacity—as a fiduciary. Compl. ¶¶ 164-172. Count XIII alleges that "WMATA and the Board of Trustees breached their fiduciary duties (a) as to Plaintiff Cray by failing to keep adequate records of his service, by enforcing an amendment that reduced his vested benefits, by failing to provide him adequate documents and by deciding to deny his benefits based on those inadequate records, (b) as to Plaintiff Wingo, failing to use reasonable steps to ensure proper records of Mr. Wingo's election, failing to inform her and/or her husband of election as to the form of retirement annuity, deciding to deny Ms. Wingo benefits based on inadequate records." Compl. ¶¶ 170; *see also* Compl. ¶ 164-169, 171-172. The Complaint does not allege that these actions were informed by political, social or economic choices. *Compare id with Whiteru*, 258 F. Supp. at 185 *and Abdulwali*, 315 F.3d at 304. Count XIII does not allege that the alleged conduct underlying these breaches were undertaken pursuant to internal WMATA policies, nor does WMATA suggest that there were such policies instructing the destruction of records or the alteration of records. As

illustrated by Defendants cases decided on summary judgment, discovery is required to determine: (1)) whether such policies in fact exist; and (2)) whether such conduct was governmental or proprietary. For example, Plaintiff Cray alleges that he was told that his service records were destroyed first in a flood, then in a fire, and finally that they were nonexistent. Compl. ¶¶ 41-46. Plaintiff Wingo alleges that her husband's election form was improperly altered. *Id.* ¶¶ 57-63. Defendants have not suggested that WMATA, in its discretion and pursuant to political, social or economic considerations, designed a policy whereby its employees were instructed to advise plan participants that their service records had been destroyed in a flood or in a fire, when they in fact exist or alter records or fail to keep proper records. But if these actions violated WMATA's record-keeping policies and the alleged conduct violated this policy, that conduct was proprietary, and WMATA consented to liability for it in Section 80 of the Compact. *Sanders*, 819 F.2d at 1156 (holding that WMATA is immune from claim regarding drug testing policy because the allegations were "all general attacks on the testing plan itself, not on the manner of testing in a particular case.") *see Dant v. D.C.*, 829 F.2d 69, 75 (D.C. Cir. 1987) (holding that WMATA did not enjoy sovereign immunity from abuse of process claim); *Wainwright v. WMATA.*, 903 F.Supp. 133, 138 (D.D.C. 1995) (holding that plaintiff can pursue claims alleging negligent implementation of safety decisions, rather than negligent safety policies); *Sanguesa v. WMATA*, No. CIV. A. 89-3475, 1990 WL 141772, at *5 (D.D.C. Sept. 20, 1990) (holding that plaintiff can pursue her claim "insofar as she can establish that her injuries were caused by the negligent conduct of the station managers, and not by the security procedures implemented by WMATA."). This is a factual determination dependent on the character of evidence which will be subject to further discovery. *See Souders v. WMATA*, 48 F.3d 546, 549 (D.C. Cir. 1995) (analyzing content and history of noise level policies in determining whether

conduct was proprietary or governmental). Thus, this is not an issue appropriate to resolve on a motion to dismiss.

Count XIII does not allege that WMATA or the Board made a policy decision (1) to fail to keep adequate employment/pension eligibility records; (2) to make eligibility determinations without access to adequate records; or (3) to decline to provide participants with plan and/or trust documents upon request. Count XIII does not second-guess the "wisdom" of any policy decisions, nor have Defendants claimed that these alleged acts were undertaken in consideration of WMATA's social, political and economic obligations. As the conduct in Count XIII is plausibly proprietary, and Plaintiffs are entitled to the benefit of all inferences that can be derived from the facts, it can reasonably inferred from the factual allegations that the conduct was not within Defendants' discretion, and was not reasonably grounded Defendants' political, social and economic obligations. Any determination as to whether WMATA's conduct was in fact proprietary or governmental requires discovery,. As such, Defendants' motion to dismiss Count XIII on the basis of sovereign immunity should be denied.

### C. Defendants' Purported Contractual Limitations on Defendants' Liability Does Not Bar Plaintiffs' Common Law Claims.

Defendants argue that Section 10.10 of the WMATA Plan, and Section 12.08 of the TERP, disclaim liability for all acts other than "willful neglect" or "willful misconduct," respectively. Def. Mem. at 18-19. [10] Despite Plaintiffs' *multiple requests for these documents*

---

[10] Defendants also invoke Section 12.10 of the WMATA Plan for the proposition that Defendants are, generally, protected for all conduct taken in good faith. ECF No. 11-2 at 18-19. But as Defendants' own case explains, "section 12.10 of the Plan Document has no bearing on this dispute. "The clear terms of the provision suggest that it relates to investment decisions made by or on behalf of the Retirement Plan, rather than to disputes between WMATA, the Retirement Plan, the Trustees, and Plan Participants, and, in fact, this provision does not even mention the Plan Participants at all." *Sharma,* 58 F.Supp.3d at 69. This section simply allows WMATA, its

*before filing this litigation,* Defendants refused to provide copies of these documents to Plaintiffs. Compl. ¶¶ 181-182, 187-188, 192-193.

First, these documents are not incorporated by reference because Defendants refused to provide them *before this litigation was filed* and they were not relied on to draft the Complaint. *Supra* § Argument I.

Second, claims for fiduciary breach allegations are premised on duties created by law due to Defendants' fiduciary status, not on the terms of the Plans.

Third, neither the Retirement Plan nor the Transit Plan define "willful misconduct" nor do Defendants offer a definition. As Defendants do not offer any definition of these terms or explain why Plaintiffs' allegations do not meet this requirement, they do not meet their burden of proving that these Plan terms bar Plaintiffs' claims. *Nat'l Rifle Ass'n v. Ailes*, 428 A.2d 816, 821 (D.C. 1981) (*quoting Backus v. Veterans Co-op. Housing Ass'n*, No. 1330, 96 A.2d 513, 515 (1953). ("[T]he burden of establishing the terms of a contract rests upon the party suing thereon.").

Finally, the Complaint sufficiently alleges willful misconduct or willful neglect under the accepted definitions of those terms. The Supreme Court defined "willful neglect" as used in the Internal Revenue Code as "a conscious, intentional failure or reckless indifference." *United States v. Boyle*, 469 U.S. 241, 245 (1985); 26 U.S.C.A. § 6651; *e.g.*, 45 C.F.R. § 160.401. Likewise, the DC Circuit has defined the term "willful misconduct" – as a limitation on liability in the Warsaw Convention – as reckless disregard. *Saba v. Compagnie Nationale Air France*, 78 F.3d 664, 667 (D.C. Cir. 1996). This requires that the entity subjectively appreciated the risks of

---

employees, and the trustees to rely on advice they receive from investment advisors. *Id*. As in *Sharma,* Section 12.10 is irrelevant to the allegations in the Complaint.

its actions, and disregarded those risks. *Id*. at 668. (explaining that defendant must be "subjectively aware of the consequences of his act—not necessarily that it would cause the exact injury, but at least that it was certainly likely to cause an injury to plaintiff"). In other words, defendant must have either intended bad consequences, or recklessly disregarded the high risk of bad consequences. *Id*. at 670.

When affording Plaintiffs the benefit of all inferences derived from the facts alleged in the Complaint, Count XIII (and Count XVI) sufficiently alleged fiduciary breaches were willful. Counts XIII and Count XVI alleges that Defendants failed to keep adequate records, provided alternative explanations as to whether documents had been destroyed or how – suggesting that Plaintiff Cray could "pick one" – or whether they existed, altered benefits election forms and refused to provide documents upon request. Compl. ¶¶ 41-46,59-63, 170, 181-183, 187-190, 192-196. These allegations are sufficient to allege that these are either willful acts of misconduct or reckless disregard. Providing inconsistent explanation about the existence of records, is evidence of acting with, at least, reckless indifference if not intent. *Id.* at ¶¶ 41, 42. When Defendants decided that he was ineligible for pension benefits, they did so with the knowledge that they did not have Plaintiff Cray's complete service record before him. *Id*. at ¶¶ 49, 170. Allegations that Plaintiff Wingo's husband's benefit election was altered is sufficient that it was done intentionally, with reckless indifference to the possibility that Plaintiff Wingo would be prejudiced by the alteration. *Id*. at ¶ 58. Thus, Counts XIII and XIV adequately allege that Defendants engaged in "willful neglect" and "willful misconduct."

## IV. Plaintiffs Should Be Granted Leave to Amend if Defendants' Motion is Granted.

Defendants request that the Complaint be dismissed with prejudice. Def. Mem. at 2. But a dismissal *with prejudice* is warranted only when a trial court "determines that 'the allegation of

other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Firestone v. Firestone*, 76 F.3d 1205, 1208-1209 (D.C. Cir. 1996) (reversing dismissal with prejudice); *Alley*, 984 F.2d at 1207-08 (same). To the extent an element of Plaintiffs' claims has not been sufficiently pled, that defect can be cured with an amended complaint. At minimum, as Defendants have now attached documents that Plaintiffs requested before filing the Complaint and which Defendants refused to provide, Plaintiffs should be afforded the opportunity to amend their common law claims to extent that any claims are dismissed based on WMATA's claim of sovereign immunity. Thus, if Defendants' Motion is granted in whole or in part, leave to amend should be granted as a matter of course.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Dated: November 20, 2026

Respectfully submitted,

R. Joseph Barton (Bar #476510)
THE BARTON FIRM LLP
1633 Connecticut Ave., N.W.
Suite 200
Washington, DC 20009
Tel: (202) 734-7383
Email: jbarton@thebartonfirm.com

Adam Harrison Garner (MD27648)
THE GARNER FIRM, LTD.
1617 John F. Kennedy Blvd., Suite 1111
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
Email : adam@garnerltd.com

*Attorneys for Plaintiffs*